OPINION
{¶ 1} Appellant, Kenneth J. Horsley, appeals from the jury verdict and sentence rendered March 17, 2005 in the Franklin County Municipal Court. A jury found appellant guilty of one count of menacing by stalking and not guilty of two counts of menacing. Appellant was sentenced to 180 days of incarceration, with 49 days of credit for pretrial confinement.
 {¶ 2} Appellant first met the victim, Kyle Fugitt, in 1998. They began dating and eventually, lived together for a period of nearly five years. Two years into the relationship, appellant and Fugitt had a daughter. They separated in 2003 and a history of conflict followed. In January 2004, appellant was convicted of harassing Fugitt by telephone. While on house arrest awaiting sentencing on the telephone harassment conviction, appellant removed his ankle monitor and escaped from custody. During his brief period of freedom and despite a no-contact order issued by the court, appellant went to Fugitt's workplace, telephoned her from a nearby building, and tried to persuade her to meet him.
 {¶ 3} Appellant was apprehended in February 2004. Four months later, he was convicted of resisting arrest, fleeing, and escape and sentenced to serve a period of incarceration. The events leading to his current conviction for menacing by stalking occurred while appellant was serving his sentence on the earlier charges.
 {¶ 4} On several occasions, Fugitt went to the Franklin County Jail to seek appellant's permission to secure their daughter's belongings from appellant's apartment. The visits had no other purpose. (Tr. 51.) Eventually, appellant agreed to allow Fugitt to collect the child's items. Later, in June 2004, appellant telephoned Fugitt at her home. Fugitt asked appellant not to contact her anymore. (Tr. 47.) Appellant ignored the victim's request and continued to telephone her. In June 2004, Fugitt contacted officials at the jail and asked that appellant not be allowed to telephone her. In response to her request, Corporal Reiner of the Franklin County Sheriff's Office told appellant that he could no longer telephone Fugitt. Fugitt also contacted the telephone company to block any incoming calls to her number from the jail. As a result, the telephone calls from the jail stopped. However, appellant continued to contact Fugitt by mail.
 {¶ 5} During the period from July to September 2004, Fugitt received seven letters from appellant while he was serving his sentence for the earlier offenses. The first letters bore the return addresses of the Franklin County Jail and the Franklin County Corrections Center while later letters showed the return address of the adult prison system. All of the letters were mailed to Fugitt's place of work, Riverside Methodist Hospital. The letters were variously addressed to Fugitt, to her supervisor and to the hospital administrator. Appellant wrote that he wanted to see his daughter and expressed frustration at Fugitt's lack of response to his communications.
 {¶ 6} The tone of the letters became increasingly angry. Appellant made allegations (apparently unfounded), of sexual abuse by both Fugitt and Fugitt's mother. Appellant wrote: "Continue to have fun. Your time clock is running out." "Your big mouth is what your [sic] gona [sic] wish you never ran." "You know me very well and you have really messed up big time." "You know how I am and you know exactly that I belive [sic] in a tooth for a tooth but only the way I am and thats [sic] you take 10 dollors [sic] from me and I take 150 from you." (Exhibit Nos. 8-12.) Based on the letters, appellant was charged with one count of menacing by stalking and two counts of menacing.
 {¶ 7} Appellant entered a plea of not guilty and the case was tried to a jury. Before opening statements, the state advised the court that it wished to question Fugitt regarding appellant's telephone harassment conviction, his escape from house arrest, and his contact with her during that period of escape in order to show the context of their relationship and Fugitt's state of mind while receiving the letters. Initially, the trial judge indicated that the state would not be permitted to introduce that evidence. (Tr. 7-8.) However, following an overnight recess, the state provided the trial court with decisional authority that supported the state's position. The trial court elected to defer the determination of admissibility until the evidence was presented in the context of trial. (Tr. 17-19.)
 {¶ 8} The state presented three witnesses: victim Fugitt, Allen Mozak (Fugitt's boyfriend), and Deputy Reiner. Deputy Reiner testified that at the victim's request, he notified appellant that he was no longer permitted to telephone Fugitt. Allen Mozak testified to the physical and emotional changes he noticed in Fugitt as a result of the letters. Fugitt testified that she was frightened of appellant and the letters made her fearful regardless of their tone or appellant's incarceration. Fugitt testified that she had trouble sleeping, cried often, and was worried about losing her job because of the letters. Furthermore, she feared for her life to the degree that she had a will drafted to provide for her daughter in the event she were killed.
 {¶ 9} Cross-examination by defense counsel suggested that the wording of appellant's letters had an innocent meaning and plaintiff's interpretation of threats of harm was not reasonable. (Tr. 54-60.) Defense counsel impeached Fugitt by obtaining her concession that she had problems sleeping before appellant began his letter writing campaign, thus suggesting that her sleeplessness was not caused by appellant's actions. (Tr. 63.)
 {¶ 10} On redirect examination, the state sought to counter the inference left by defendant's cross-examination by asking Fugitt the reason that she had difficulty sleeping prior to receiving appellant's letters. The state argued that defense counsel opened the door to that line of questioning by asking about Fugitt's prior sleeping problems, since her earlier sleeping problems were also caused by appellant's abusive acts. The trial court permitted the inquiry over objection by the defense.
 {¶ 11} At the close of the state's evidence, defense counsel moved for a judgment of acquittal under Crim.R. 29(A). The motion was denied. Appellant elected to rest without offering any testimony or evidence. Defense counsel did not request a limiting instruction regarding Fugitt's explanation for her prior sleeplessness. The jury found appellant guilty of menacing by stalking but not guilty of the two counts of menacing.
 {¶ 12} Appellant asserts three assignments of error:
1. THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF PRIOR ACTS AND CONVICTIONS PURSUANT TO OHIO RULE OF EVIDENCE 404(B).
2. THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AND WAS THUS DENIED HIS RIGHT TO A FAIR TRIAL.
3. THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING THE DEFENDANT'S CRIMINAL RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL AND THE DEFENDANT'S CONVICTION FOR MENACING BY STALKING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 13} In his first assignment of error, appellant argues that the admission of evidence regarding his prior conviction and other acts should have been excluded under Evid.R. 404. Further, he contends that even if the evidence was properly admitted under Evid.R. 404(B), the court still erred in failing to give a limiting instruction to the jury.
 {¶ 14} The state contends the evidence was properly admitted to show Fugitt's state of mind, a necessary element of menacing by stalking. Additionally, the state notes that appellant failed to object to the lack of a limiting instruction and the doctrine of waiver precludes appellant from claiming error on appeal.
 {¶ 15} The decision to admit or exclude evidence rests primarily within the discretion of the trial court. State v.Sage (1987), 31 Ohio St.3d 173, 180. Appellate review of a trial court decision to admit or exclude evidence is limited to an abuse of discretion standard. State v. Mardis (1999),134 Ohio App.3d 6, 20. To find that a trial court abused its discretion in the admission of evidence, the record must demonstrate that the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 16} The Ohio Rules of Evidence define and regulate the admission of evidence. Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 402 provides that evidence is admissible if it is relevant and is inadmissible if it is irrelevant. In effect, Evid.R. 402 provides that, if the proposed evidence does not tend to prove or disprove anything that is of importance in the case, the evidence is excluded.
 {¶ 17} Evid.R. 403 and 404 contain exceptions to the general provisions of Evid.R. 401 and 402, but at their core, are still rules of relevancy. Evid.R. 403(A) mandates the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(B) provides discretionary exclusion of relevant evidence "if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."
 {¶ 18} Evid.R. 404 governs character evidence. In general and with certain exceptions not relevant to this discussion, Evid.R. 404(A) provides that evidence of a person's character is not admissible simply to prove that the person acted in conformity with that character trait on a particular occasion. As with the previous rules, Evid.R. 404 is a rule of relevancy. Therefore, without more, evidence that merely shows that the defendant is a bad person in general is not relevant because it fails to prove, tend to prove or disprove any fact that is of consequence to the determination of the case.
 {¶ 19} Evid.R. 404(B) excludes evidence of other crimes, wrongs, or acts when they are offered only to show that an accused acted in conformity therewith. This is consistent with the theme stated in Evid.R. 404(A): evidence of a person's bad character is not relevant to the question of what that person did or did not do on a specific occasion. However, despite the general irrelevancy of character evidence, evidence of other, unrelated acts, crimes or wrongs is admissible if offered to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 20} R.C. 2945.59 which pre-dates adoption of the Rules of Evidence contains an exception similar to that found in Evid.R. 404(B):
In any criminal case in which the Defendant's motive or intent, the absence of mistake or accident on his part, or the Defendant's scheme, plan, or system in doing an act is material, any acts of the Defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the Defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior, or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
With minor differences, the essence of the rule and statute is the same.
 {¶ 21} Rules regarding the admissibility of evidence govern procedure and do not confer substantive rights. R.C. 2945.59
simply expresses the common law rule on admissibility of certain evidence. It is a rule of evidence and not of substantive law.State v. Pigott (1964), 1 Ohio App.2d 22; State v. Pack
(1968), 18 Ohio App.2d 76; State v. Spradling (Mar. 31, 1982), Butler App. No. 81-07-0059.
 {¶ 22} There is little difference between Evid.R. 404(B) and R.C. 2945.59. As with the statute, Evid.R. 404(B) concerns the admissibility of evidence. Neither the statute nor the rule confers a substantive right. Therefore, were there a conflict between the statute and the rule, the rule would prevail. Section5(B), Article IV, Ohio Constitution. See State v. Brown (May 14, 1999), Montgomery App. No. 17343.
 {¶ 23} Applying Evid.R. 401 through 404, we see that: (1) evidence must be relevant to be admissible; (2) character evidence and other bad acts are generally not relevant or admissible if offered only to prove actions in conformity therewith; (3) if that same evidence makes more or less probable the existence of any fact that is of consequence to the determination of the action, the evidence is admissible; unless (4) under certain circumstances, a trial court may be required to exclude the evidence pursuant to Evid.R. 403. Again, the rule is virtually identical to the statute and decisional law construing the statute is valuable in construing the rule.
 {¶ 24} So-called "other acts" evidence is admissible to prove a "scheme, plan or system in doing an act." State v. Curry
(1975), 43 Ohio St.2d 66, 72-73 (construing R.C. 2945.59). Generally, other acts evidence is admissible when that evidence "form[s] part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment." Id. at 73. Background evidence is evidence of events that are inextricably related to the alleged criminal act. Id. See, also, State v. Thompson (1981), 66 Ohio St.2d 496. Evidence of other crimes may be presented when they are so blended or connected with the one on trial that proof of one incidentally involves the other, explains the circumstances thereof or tends logically to prove any element of the crime charged.
 {¶ 25} Appellant was charged with menacing by stalking pursuant to R.C. 2903.211. That section provides, in pertinent part, as follows:
No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
Proof of a pattern of conduct alone is not sufficient. The state must also prove to the trier of fact that the defendant knew that his conduct would cause the victim to believe that the defendant was going to harm the victim or believe that the defendant would cause mental distress to the victim.
 {¶ 26} Evidence of prior acts and behavior is particularly important to prove the crime of menacing by stalking. Stalking may require examination of the offenders past conduct involving the victim to assist a jury in understanding the context of what otherwise might appear to be an innocent act. "Other acts evidence can be particularly useful in prosecutions for menacing by stalking because it can assist the jury in understanding that a defendant's otherwise innocent appearing acts, when put into the context of previous contacts he has had with the victim, may be knowing attempts to cause mental distress." State v. Bilder
(1994), 99 Ohio App.3d 653, 658. See, also, State v. Tichon
(1995), 102 Ohio App.3d 758.
 {¶ 27} In this case, the letters sent by appellant could not be viewed in a vacuum. The relationship between the victim and appellant was relevant to explain why the pattern of conduct caused the victim to believe that appellant would cause her physical harm or cause her mental distress. Therefore, evidence of appellant's past conduct toward the victim, including his conviction for telephone harassment and his actions while on escape from house arrest, was relevant and properly admissible in the state's case-in-chief.
 {¶ 28} Even if we assume the evidence were of questionable relevancy during the state's case-in-chief, unquestionably the evidence became relevant after appellant attempted to impeach the victim about her prior sleeplessness. See State v. Kerby (Mar. 26, 1974), Franklin App. No. 73AP-408, and State v. Shaw (Sept. 15, 1992), Franklin App. No. 92AP-147. Appellant cross-examined Fugitt on her inability to sleep during the period of time prior to the arrival of appellant's first letter, thereby attacking her testimony that her sleeplessness was caused by appellant's letters. However, that previous inability to sleep was caused by appellant's prior contact with the victim, both by phone and during the period when he escaped from house arrest. It would be eminently unfair to allow the defense to impeach Fugitt about circumstances created by appellant and then deny the state the opportunity to elicit evidence that explained and rebutted the inference created by cross-examination.
 {¶ 29} In sum, the trial court did not err in permitting the state to elicit evidence of appellant's prior acts involving this victim. The evidence was relevant in that it tended to prove or disprove a fact of consequence; the reason for the victim's belief that appellant would cause her physical harm and her mental distress as a result of appellant's acts. The evidence was not unduly prejudicial and ultimately, was invited by the defense on cross-examination.
 {¶ 30} In the second portion of his first assignment of error, appellant argues that even if the evidence was properly admitted, the trial court still erred by failing to issue a limiting instruction to the jury. Typically, we need not consider any claim regarding a particular error if that claim was not preserved by objection, ruling or otherwise in the trial court.State v. Hill (2001), 92 Ohio St.3d 191, 196. If the particular claim of error has not been preserved by objection, the error is waived absent a finding of plain error. Id. See, also, Bilder,
supra.
 {¶ 31} Here, defense counsel did not ask for a limiting instruction or object to the court's instructions to the jury at the conclusion of the case. Therefore, appellant may not claim error in this regard unless we were to find plain error.
 {¶ 32} The plain error doctrine allows a court to address an error that has otherwise been waived. Crim.R. 52(B) provides that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." However, application of the doctrine is limited to exceptional circumstances. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. We have said that plain error "does not exist unless it can be said that, but for the error, the outcome of the trial clearly would have been otherwise." State v.Carsten, Franklin App. No. 02AP-166, 2002-Ohio-6748, ¶ 37.
 {¶ 33} Under the facts of this case, we find no plain error. This is not a situation involving exceptional circumstances in which we must notice plain error to avoid a manifest miscarriage of justice. We cannot say that, but for the claimed error, the outcome of the trial clearly would have been otherwise. Accordingly, appellant's first assignment of error is overruled.
 {¶ 34} In his second assignment of error, appellant argues he was denied his Sixth Amendment right to the effective assistance of counsel. Appellant bases his ineffectiveness claim on the fact that defense counsel failed to object to evidence of his prior acts involving the victim and also failed to seek a limiting instruction from the court.
 {¶ 35} Analysis of claims of ineffective assistance of counsel brought under the Sixth Amendment places the burden upon the defendant to demonstrate counsel's ineffectiveness:
* * * [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." See Michel v.Louisiana, supra, 350 U.S., at 101, 76 S.Ct., at 164. * * *.
Strickland v. Washington (1984), 466 U.S. 668, 689,104 S.Ct. 2052.
 {¶ 36} The Strickland court went on to set forth a two-prong test for judging claims of ineffective assistance of counsel. That two-prong test was reiterated by the Supreme Court of Ohio as follows:
* * * Reversal of a conviction for ineffective assistance of counsel" requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense."Strickland v. Washington (1984), 466 U.S. 668, 687 * * *. Accord State v. Bradley (1989), 42 Ohio St.3d 136, * * * paragraph two of the syllabus.
State v. Hand, 107 Ohio St.3d 378, 2006-Ohio-18, ¶ 199.
 {¶ 38} A defendant who claims that counsel was ineffective must show that, but for trial counsel's errors, it is reasonably probable that the result of the trial would have been different. A reasonable probability is one sufficient to undermine confidence in the trial outcome.
 {¶ 39} Appellant asserts his trial counsel was ineffective because she: (1) failed to protect him from the admission of highly prejudicial evidence, and (2) failed to request a limiting instruction after the evidence was admitted. Having reviewed all the evidence, we cannot say appellant's trial counsel acted unreasonably or unprofessionally, or erred so seriously as to have been ineffective in the context of the Sixth Amendment.
 {¶ 40} Appellant did not offer any witnesses or evidence in his defense. Counsel was left with little choice but to attempt to impeach the credibility of the state's primary witness. That attempt was a reasonable trial strategy. Moreover, as noted above, the evidence of appellant's prior conduct involving this victim was properly admissible in the state's case-in-chief, regardless of defense counsel's cross-examination. Appellant has not met his burden to prove that his counsel made professional errors of such magnitude that she was not functioning as counsel as that term is used in the Sixth Amendment.
 {¶ 41} Appellant also argues that his counsel was ineffective because she failed to object to the lack of a limiting instruction by the court. "Defense counsel's failure to object does not automatically become an ineffective assistance of counsel unless the failure to object rises to the level of plain error." State v. Koogler (Sept. 6, 1984), Franklin App. No. 84AP-221, citing United States v. DeWolf (C.A.1, 1982),696 F.2d 1. To allow a defendant to claim ineffective assistance of counsel based on a failure to object at a time when error could be corrected or avoided would allow a defendant to whipsaw the state where a plain error claim failed. To do so would effectively repeal the doctrine of waiver and the provisions of Crim.R. 52.
 {¶ 42} We held above that evidence of appellant's previous conduct involving the victim was relevant and admissible. We further held that the lack of a limiting instruction was not plain error. Those findings do not change when viewed in a claim that counsel was ineffective. Appellant has failed to demonstrate that counsel committed errors so serious that, but for those errors, there would be a reasonable probability that the outcome of trial would have been different. We do not lack confidence in the outcome of trial in this case. Appellant's second assignment of error is overruled.
 {¶ 43} In his third assignment of error, appellant argues that the trial court erred in failing to grant his motion for judgment of acquittal under Crim.R. 29. Appellant also urges that the verdict was against the manifest weight of the evidence.
 {¶ 44} In ruling on a motion for judgment of acquittal, the trial court must view the evidence in the light most favorable to the state. The Ohio Supreme Court has consistently held that a trial court may not enter a judgment of acquittal where reasonable minds could differ on whether each material element of a crime has been proven beyond a reasonable doubt. E.g., Statev. Bridgeman (1978), 55 Ohio St.2d 261; State v. Johnson
(1989), 46 Ohio St.3d 96; State v. Thompkins (1997),78 Ohio St.3d 380, 386.
 {¶ 45} Appellant offers three arguments why he believes that the trial court should have entered a judgment of acquittal. First, appellant asserts that the state failed to present any evidence of direct, indisputable threats to Fugitt's physical safety. Menacing by stalking, R.C. 2903.211, does not require proof of direct threats as appellant asserts. The statute requires only a pattern of conduct which causes the victim to believe that the offender will cause physical harm to the victim or will cause mental distress to the victim. Neither actual physical harm nor actual mental distress is required. Direct threats to the victim's safety are not required to prove menacing by stalking. State v. Smith (1998), 126 Ohio App.3d 193;Dayton v. Davis (1999), 136 Ohio App.3d 26. Therefore, appellant's first argument under the third assignment of error fails.
 {¶ 46} Second, appellant argues that proof of mental distress requires proof that the victim sought treatment; proof that was lacking at trial. Nothing in R.C. 2903.211 suggests that actual treatment by a professional is required to prove mental distress. Even where prosecution rests on mental distress as defined in R.C. 2903.211(D)(2)(b), subparagraph (E) of that section provides that "[t]he state does not need to prove * * * that a person requested or received [mental health services]." Moreover, the trier of fact may make the determination of whether the state has proved a temporary substantial incapacity or a mental illness that would normally require psychiatric treatment. Expert testimony is not required in a prosecution for menacing by stalking. "The jurors themselves, can refer to their own experiences in order to determine whether, and to what extent, the defendant's conduct caused the serious emotional distress."Bilder, at 665. Accord State v. Scott, Summit App. No. 20834, 2002-Ohio-3199. The second portion of the third assignment of error fails.
 {¶ 47} Finally, in the third argument in support of his third assignment of error, appellant states that his motion for a judgment of acquittal should have been granted because the state failed to prove that the victim was actually incapacitated as a result of his conduct. However, actual mental distress on the part of a victim is not a required element of menacing by stalking. Dayton v. Davis, supra, at 32. The state need only show that a defendant knowingly caused the victim to believe that he would cause her mental distress or physical harm. Actual mental distress or physical harm is not required. Id. at 32-33.
 {¶ 48} Moreover, the testimony of the victim was sufficient to meet the statutory definition of "mental distress." R.C.2903.211(D)(2) defines "mental distress" as either of the following:
(a) Any mental illness or condition that involves some temporary substantial incapacity;
(b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.
The victim testified that she was afraid of appellant and afraid of what he would do when he was released from jail. Appellant's conduct was "very scary," she was "nervous and afraid" and "scared." (Tr. 24-32.) The victim was so frightened by appellant's conduct and her belief that he would follow through with his threats against her, that she had her last will and testament prepared to protect her daughter if she were killed. (Tr. 39-44.) As a result of her fear and anxiety, the victim was unable to sleep and unable to concentrate for a significant period of time.
 {¶ 48} Substantial incapacity does not mean that the victim must be hospitalized, or totally unable to care for herself. Incapacity is substantial if it has a significant impact upon the victim's daily life. The inability to sleep or concentrate on one's work is substantially incapacitating to that person. Additionally, an inability to sleep or concentrate for a protracted period of time is a condition that normally would require some form of mental health services to overcome. Thus, even if the prosecution were required to prove that the victim actually suffered mental distress, sufficient evidence was presented to allow the trier of fact to conclude that the victim did suffer mental distress as defined by R.C. 2903.211(D)(2)(a) and (b).
 {¶ 49} Because sufficient evidence was presented on each element of the offense to permit a rational trier of fact to conclude that appellant was guilty beyond a reasonable doubt, the trial court correctly overruled the motion for judgment of acquittal. The verdict is not against the manifest weight of the evidence. The third assignment of error is overruled.
 {¶ 50} Having overruled all of appellant's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
Sadler and McGrath, JJ., concur.