[Cite as *Griga v. DiBenedetto*, 2012-Ohio-6097.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| THOMAS GRIGA, | : | APPEAL NO. C-120300 |
| | | TRIAL NO. SK-1101329 |
| Petitioner-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| RICH DIBENEDETTO, | : | |
| Respondent-Appellant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appelaed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded.

Date of Judgment Entry on Appeal: December 26, 2012

*Thomas Griga*, pro se,

*The Farrish Law Firm* and *Michaela M. Stagnaro*, for Respondent-Appellant.

Please note: This case has been removed from the accelerated calendar.

**HILDEBRANDT, Presiding Judge.**

{¶1}     Petitioner-appellee Thomas Griga moved the trial court for a Civil Stalking Protection Order ("CSPO") under R.C. 2903.214, requesting that the court restrain respondent-appellant Rich DiBenedetto from having contact with Griga, and with Griga's wife, his two sons, his daughter, and his parents.  The trial court granted the CSPO, naming everyone as protected persons except for Griga's parents.  This appeal ensued.

{¶2}     In his first assignment of error, DiBenedetto contends that the trial court erred in granting the CSPO because it was based on insufficient evidence and was against the manifest weight of the evidence.  This argument has no merit.

### Elements of R.C. 2903.214

{¶3}     Issuance of a protection order under R.C. 2903.214 requires the petitioner to establish, by a preponderance of the evidence, that the respondent engaged in conduct constituting menacing by stalking. R.C. 2903.214(C)(1). *See Lindsay v. Jackson*, 1st Dist. No. C-990786, 2000 Ohio App. LEXIS 4043 (Sept. 8, 2000).   The menacing-by-stalking statute provides, in relevant part, that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."  R.C. 2903.211(A)(1).

{¶4}     In this case, DiBenedetto specifically contends that Griga failed to prove the "mental distress" element of R.C. 2903.211(A)(1). To address this argument, we must first determine what the statue requires in this regard.

2

### Belief of Mental Distress or Actual Mental Distress?

{¶5}     There is a split among the appellate districts concerning whether, to establish a violation of R.C. 2903.211(A)(1) based on "mental distress," it is sufficient to show that the victim *believed* that the offender would cause mental distress, or whether the offender must have actually *caused* mental distress.

{¶6}     The majority of appellate districts have found that causing a victim to believe that the offender will cause mental distress is sufficient. *See State v. Hart*, 12th Dist. No. CA2008-06-079, 2009-Ohio-997, ¶ 31; *Bloom v. Macbeth*, 5th Dist. No. 2007-COA-050, 2008-Ohio-4564, ¶ 11; *State v. Horsley*, 10th Dist. No. 05AP-350, 2006-Ohio-1208, ¶ 47; *Dayton v. Davis*, 136 Ohio App.3d 26, 32, 735 N.E.2d 939 (2d Dist.1999); *Ensley v. Glover*, 6th Dist. No. L-11-1026, 2012-Ohio-4487, ¶ 13; *Retterer v. Little*, 3d Dist. No. 9-11-23, 2012-Ohio-131, ¶ 39.

{¶7}     In contrast, the Seventh Appellate District has held that the menacing-by-stalking statute requires proof of actual mental distress. *Caban v. Ransome*, 7th Dist. No. 08 MA 36, 2009-Ohio-1034; *see also Strausser v. White*, 8th Dist. No. 92091, 2009-Ohio-3597, ¶ 34; *State v. Payne*, 178 Ohio App.3d 617, 2008-Ohio-5447, 899 N.E.2d 1011 (9th Dist.); *Smith v. Wunsch*, 162 Ohio App.3d 21, 2005-Ohio-3498, 832 N.E.2d 757 (4th Dist.).

{¶8}     This district has not definitively ruled on the issue. *See Jackson*, 1st Dist. No. C-990786, 2000 Ohio App. LEXIS 4043, *13; *State v. Dario*, 106 Ohio App.3d. 232, 238, 665 N.E.2d 759 (1st Dist.1995). For the following reasons, we adhere to the majority view.

## Interpretation of R.C. 2903.211(A)(1)

{¶9} The cases cited above in support of each view appear to rely either explicitly or implicitly on the plain meaning of R.C. 2903.211(A)(1). We acknowledge that where the plain meaning of a statute is clear on its face, the statute must be applied as written and not construed. *Meeks v. Papadopulos*, 62 Ohio St.2d 187, 190, 404 N.E.2d 159 (1980), citing *Sears v. Weimer* 143 Ohio St. 312, 55 N.E.2d 413 (1944). In this case, we find that the meaning of the statute is not apparent on its face. It is unclear if the phrase "knowingly cause another person to believe" relates to causing both "physical harm" and causing "mental distress," or whether this phrase only modifies "physical harm." *See* R.C. 2903.211(A)(1). Since the statute is subject to more than one interpretation, we must turn to rules of statutory construction for guidance.

{¶10} Our paramount concern in construing any statute is to discern legislative intent. *Carter v. Youngstown*, 146 Ohio St. 203, 65 N.E.2d 63 (1946), paragraph one of the syllabus. Here, we find that a "common sense reading" of R.C. 2903.211(A)(1) along with the definition of "mental distress" in R.C. 2903.211(D)(2)(a) and (b), supports the majority view. *See State v. Buehler*, 113 Ohio St.3d 114, 2007-Ohio-1246, 863 N.E.2d 124, paragraph one of the syllabus (a careful common sense reading of a statute in conjunction with related code sections may be illustrative of legislative intent).

## A Belief of Mental Distress is Sufficient

{¶11} R.C. 2903.211(A)(1) provides, "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."

"Mental distress" is "any mental illness or condition that involves some temporary substantial incapacity," or "any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services." R.C. 2903.211(D)(2)(a) and (b).

{¶12} From a reading of the first part of R.C. 2903.211(A)(1), it is evident that the legislature clearly intended to provide protection to those victims believing that an offender will cause physical harm. We can find no logical reason that the legislature would not have intended the same protection to those believing that an offender will cause mental distress. The minority view requires actual harm to have occurred before a violation based on "mental distress" can be established. In light of the legislature's clear intent to stop harm before it occurs, combined with the somewhat high standard that must be met to show "mental distress," we find that a "common sense" reading supports the majority view.

{¶13} We therefore hold that, where mental distress is alleged under R.C. 2903.211(A)(1), it is sufficient to demonstrate that an offender, by engaging in a pattern of conduct, knowingly caused the victim to believe that the offender would cause the victim mental distress. In the context of a CSPO in particular, our holding comports with this court's prior acknowledgement that a CSPO is "an important part of the overall legislative scheme that is designed to allow the police and the courts to act before a victim is harmed by a stalker." *Jackson*, 1st Dist. No. C-990786, 2000 Ohio App. LEXIS 4043, *5.

**Griga's CSPO**

{¶14}   Turning to the merits of Griga's first assignment of error, we find that the trial court's judgment is not against the weight or the sufficiency of the evidence.

{¶15}   We review the trial court's decision for an abuse of discretion. *Parrish v. Parrish*, 95 Ohio St.3d 1201, 1204, 2002-Ohio-1623, 765 N.E.2d 359*; Gutherie v. Long* 10th Dist. No. 04AP-913, 2005-Ohio-1541, ¶ 9. An abuse of discretion implies that the decision of the trial court was unreasonable, arbitrary, or unconscionable. *See Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶16}   To determine whether the "mental distress" element has been met, a trial court may rely on its own knowledge and experience.  *Wunsch*, 162 Ohio App.3d 21, 2005-Ohio-3498, 832 N.E.2d 757, at ¶ 18; *see also Horsely*, 10th Dist No. 05AP-350, 2006-Ohio-1208, at ¶ 46.  Here, the trial court determined that a CSPO should issue based on telephone calls from DiBenedetto to Griga, statements that DiBenedetto made to Girga's father, and visits and telephone calls that DiBenedetto made to Griga's place of employment. Each of these incidents revolved around an apparently highly acrimonious relationship between Griga and Griga's ex-wife, who was DiBenedetto's girlfriend.  One of the telephone calls DiBenedetto made to Griga included a threat to financially ruin Griga by running up legal costs in a child-custody dispute between Griga and his ex-wife.  DiBenedetto later approached Griga's father and informed him that he knew where Griga worked and "who he reports to," and that he would break Griga's back both "physically and financially." Finally, DiBenedetto appeared at Griga's place of employment, and also made telephone calls to Griga's employer attempting to ascertain Griga's whereabouts.

{¶17}   In light of DiBenedetto's multiple threats to financially ruin Griga, followed by his appearance at Griga's workplace, we hold that there was sufficient evidence to support the trial court's judgment that DiBenedetto had engaged in a pattern of conduct that knowingly caused Griga to believe that DiBenedetto would cause him "mental distress." *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517; *State v. Thompkins*, 78 Ohio St.3d 380, 386-87, 678 N.E.2d 541 (1997).   This argument therefore has no merit.

{¶18}   DiBenedetto next argues that the trial court's judgment was against the manifest weight of the evidence. At the CSPO hearing, DiBenedetto offered explanations for his conduct and, in some instances, testified in direct contravention to the testimony of Griga's witnesses.  DiBenedetto now essentially claims that the trial court should have believed his version of events over Griga's.  But the trial court was entitled to make its own determination as to the credibility of the witnesses. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1968), paragraph one of the syllabus. And upon a review of the record, we find that the trial court did not err in this regard. *See Eastley*, *supra*; *Thompkins*, *supra*.

{¶19}   DiBenedetto's first assignment of error is overruled.

### Griga's Family Members

{¶20}   In his second assignment of error, DiBenedetto argues that the trial court erred in granting a CSPO on behalf of a person not included in the definition of household or family member as set forth in R.C. 2903.214.  DiBenedetto is correct.

{¶21}   Under R.C. 2903.214(C), a petitioner may seek relief for himself or may seek relief on behalf of a "family or household member." In the context of the

CSPO statute, "family or household member" is a legal term of art, as defined in R.C. 3113.31(A)(3). *See* R.C. 2903.214(A)(3). Under R.C. 3113.31(A)(3), Griga was required to prove that each person that he had claimed as a "family member" lived or had lived with him. And while we appreciate that Griga's wife and children most likely did live with him, Griga presented no evidence to this effect. He therefore failed to establish that his wife and children met the legal definition of "family member." *See Guthrie*, 10th Dist. No. 04AP-913, 2005-Ohio-1541, at ¶ 8.

{¶22}   Griga also failed to present evidence that DiBenedetto had engaged in conduct constituting menacing-by-stalking as it pertained to Griga's wife and children. *See Luikart v. Shumate,* 3d Dist. No. 9-02-69, 2003-Ohio-2130, ¶ 11. We therefore sustain DiBenedetto's second assignment of error.

### Conclusion

{¶23}   The judgment of the trial court is reversed in part, and this cause is remanded with instructions to the trial court to remove Griga's wife and children as "protected persons" under the CSPO. In all other respects, the trial court's judgment is affirmed.

Judgment affirmed in part, reversed in part, and cause remanded.


HENDON and DINKELACKER, JJ., concur.

Please note:
      The court has recorded its own entry on the date of the release of this opinion.