[Cite as *M.B. v. Mettke*, 2022-Ohio-4166.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [M.B.], | : | |
| Petitioner-Appellee, | : | No. 21AP-620 |
| | | (C.P.C. No. 21CV-2072) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Richard Mettke, Sr., | : | |
| Respondent-Appellant. | : | |

D E C I S I O N

Rendered on November 22, 2022

**On brief:** *Trolinger Law Offices, LLC*, and *Christopher L. Trolinger*, for appellant. **Argued:** *Christopher L. Trolinger*.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, P.J.

{¶ 1} Respondent-appellant, Richard Mettke, Sr., appeals from a judgment of the Franklin County Court of Common Pleas granting a civil stalking protection order ("CSPO") to petitioner-appellee, M.B. For the reasons that follow, we dismiss the appeal.

**I. Facts and Procedural History**

{¶ 2} On April 6, 2021, M.B. filed a petition requesting a CSPO against Mettke. The magistrate granted an ex parte CSPO against Mettke and set the matter for a full evidentiary hearing. Following the May 10, 2021 hearing, at which both M.B. and Mettke testified, the magistrate issued a May 19, 2021 decision recommending the trial court grant M.B.'s petition and issue her a CSPO effective until April 6, 2022. Mettke filed objections to the magistrate's decision. In a November 2, 2021 decision and entry, the trial court sustained in part and overruled in part Mettke's objections, adopted the magistrate's decision, and granted the CSPO. Mettke timely appeals.

## II. Assignments of Error

{¶ 3}    Mettke assigns the following errors for our review:

[1.] The trial court erred and abused its discretion in granting appellee's petition for a civil stalking protection order as there was insufficient evidence to support such finding and such was against the manifest weight of the evidence and contrary to law.

[2.] The trial court erred and abused its discretion in finding that appellant's pursuit of civil remedies and criminal enforcement could constitute menacing by stalking for purposes of R.C. 2903.214 as such is against public policy and law.

[3.] The trial court erred in finding that appellant utilized law enforcement to charge, prosecute and maximize appellee's criminal penalties as a means of manipulating her to rekindle her relationship with him.

## III. Analysis

{¶ 4}    Before we address Mettke's assignments of error, we sua sponte consider whether the appeal is moot given that the CSPO expired on April 6, 2022.

{¶ 5}    Pursuant to the mootness doctrine, a court will not decide a case in which there is no longer any actual controversy. *In re A.G.*, 139 Ohio St.3d 572, 2014-Ohio-2597, ¶ 37. This court has recently reiterated the general rule that " 'the expiration of a [civil protection order] renders an appeal from that order moot.' " *A.F. v. R.A.T.*, 10th Dist. No. 20AP-23, 2021-Ohio-2568, ¶ 5, quoting *Foster v. Foster*, 10th Dist. No. 11AP-371, 2011-Ohio-6460, ¶ 4. There is no dispute here that the CSPO had expired prior to the scheduled oral argument in this appeal. Nonetheless, Mettke asserts the appeal is not moot based on the collateral consequences exception to the mootness doctrine.

{¶ 6}    The Supreme Court of Ohio has held that "absent a showing of legal collateral consequences resulting from an expired domestic-violence civil protection order, an appeal of that order is moot." *Cyran v. Cyran*, 152 Ohio St.3d 484, 2018-Ohio-24, ¶ 1. Although Mettke suggests that the protection order could adversely affect future reviews of the security clearance he undergoes for his employment, his argument is purely speculative. The Supreme Court was explicit in *Cyran* that "[s]peculation is insufficient to establish a legally cognizable interest for which a court can order relief using the collateral-

consequences exception to the mootness doctrine." *Id.* at ¶ 11 (declining to find the application of the collateral consequences exception where the appellant did not demonstrate or argue that he suffered any actual consequences, but instead argued "that the *possibility* of future collateral consequences should preserve his appeal of the expired order"). (Emphasis added.) "As a result, an appellant that fails to argue that he or she has suffered any consequences or that merely speculates about the possibility of future consequences has not demonstrated a legally cognizable interest for which an appellate court can provide relief." *A.F.* at ¶ 6, citing *Cyran* at ¶ 11 (noting that "no provision of Ohio law * * * imposes a restriction as a result of an expired protection order").

{¶ 7} Here, Mettke does not demonstrate any legal collateral consequences from the CSPO such that the collateral consequences exception to the mootness doctrine would apply. *A.F.* at ¶ 7; *Cyran* at ¶ 9 ("under current law, the collateral-consequences exception to mootness applies in cases in which the collateral consequence is imposed as a matter of law"). As the CSPO at issue expired by its own terms and neither the collateral consequences exception nor any other exception to the mootness doctrine applies to this case, we conclude that the questions presented by the appeal are moot. *A.F.* at ¶ 7-8. Accordingly, we dismiss the appeal.

## IV. Disposition

{¶ 8} Based on the foregoing reasons, the issues raised in this appeal are moot. Therefore, we dismiss the appeal.

*Appeal dismissed.*

NELSON, J., concurs.
JAMISON, J., dissents.

NELSON, J., retired, formerly of the Tenth Appellate District,
assigned to active duty under authority of Ohio Constitution,
Article IV, Section 6(C).

NELSON, J., concurring.

{¶ 9} I concur in full with the decision of the court because we are bound by the Supreme Court's instruction in *Cyran.*

{¶ 10} Although I am sympathetic with the concerns of the dissent, I do not believe that the "imminent threat" standard that it proposes with regard to possible collateral

consequences is derived from or consistent with the majority decision in *Cyran*.  *Compare* dissent here at ¶ 24 *with Cyran* (declining to adopt the probability analysis of the vigorous dissent there, but looking instead to whether a continuing disability was "impose[d]" as a matter of law as a result of the expired protection order).  Mr. Mettke has not demonstrated either that loss of his claimed security clearance is a necessary consequence of the expired protection order, or even that review of such clearance would not be triggered by the allegations or admitted facts of this matter (as opposed to the fact of the expired order itself). I join the decision of the court.


JAMISON, J., dissenting.

{¶ 11} I disagree with the decision to dismiss this appeal as moot because I believe the record shows appellant will experience significant collateral consequences as a result of the findings made by the trial court in granting the CSPO.  Additionally, because appellant raises a public policy challenge to the CSPO, I believe it is important to reach the merits of the appeal.  For these reasons, I respectfully dissent.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 12} At the hearing on the CSPO, appellee told the magistrate that she is afraid of appellant.  Appellee maintained that appellant was terrorizing and harassing her and trying to destroy her life.  Appellee testified that appellant stepped up his pattern of threatening words and conduct towards her after a protection order issued to her by the domestic relations court was subsequently dismissed.  Appellee submitted evidence in the form of emails and text messages sent to her by appellant on March 25, 2020, July 19, 2020, July 24, 2020, December 8, 2020, March 8, 2021, and March 13, 2021.  Appellant admitted that his texts to appellee include the following claims and allegations: "You lied to me and you got arrested for solicitation.  You lied to me and you got arrested for felony drug possession.  Yep ... You can blame me ..... * * * Your probation Violation ... You can blame me.  I pushed the [Grove City] police to file the Felony drug possession charges.  I wish you would have presented your case at the Protection order hearing you would have had more charges .... All because of you[r] lies. * * * I will see you at the small claims hearing to show how you defrauded me again ... I have all of your texts.  But if you show up, I will have you

arrested. * * * Or come back to me on bended knee. You have to ask and see what I say." (May 18, 2021 Petitioner's Ex. at 7-8.)

{¶ 13} On April 12, 2020, appellant sent a text message to a mutual acquaintance promising he would do whatever he could to make sure appellee gets jail time. In the same text, appellant boasted: "I am the one that got [appellee] arrested and am proud of [it]." (Petitioner's Ex. at 9.) In the text message appellant warns that he will make sure that appellee's "life as a normal citizen is over" because of her deceitful conduct in causing him to believe she loved him. (Petitioner's Ex. at 10.) Appellant also sent text messages to appellee informing her that he had contacted the state police and various local police departments claiming appellee was a fugitive from justice and providing her address. In that correspondence, appellant referred to appellee as a "piece of shit Psycho." (Petitioner's Ex. at 3.)

{¶ 14} In March of 2021, after appellant learned that appellee had been living with a boyfriend, he sent a letter to the boyfriend informing him that he had turned appellee into police for being a paid escort. Appellant admitted that he had appellee arrested on an outstanding warrant when she appeared at a March 16, 2021 hearing in small claims court. Appellant excused his behavior toward appellee by insisting that she had caused him harm by deceiving him about their relationship and taking advantage of his generosity.

{¶ 15} Although appellant admitted that he sent numerous correspondence to appellee in 2020 and 2021, he insisted that none of the emails and texts contained threats. Appellant did acknowledge that he sent a package to the father of appellee's ex-boyfriend containing information about the various pending actions against appellee. Appellant claimed that he did so because he believed appellee still lived at the address. The package contained several photographs depicting appellant and appellee posing in front of a mirror in the nude. One of the photographs also depicts a third unidentified and unclothed female posing with appellant and appellee in a compromising position.[1] Appellee testified that appellant sent the same salacious photograph to appellee's 87-year old grandmother and aunt who lived in Texas.

---

[1] Though the genitals are scratched out of the photographs, as well as the breasts of the females, the salacious nature of the photographs are evident.

{¶ 16} Appellee told the magistrate that appellant continued to contact her after she had unequivocally told him she did not want to have any further contact with him. Though some of appellee's correspondence with appellant suggest equivocation or encouragement to appellant, the magistrate found her testimony credible on this matter. She also provided unrebutted testimony that she has received treatment for post-traumatic stress disorder as a result of appellant's continued harassment.

{¶ 17} When the magistrate asked appellee why she believed appellant would kill her, she responded that she believes appellants behaviors show that he is mentally unstable. Appellee also testified that appellant owns multiple firearms, and he keeps one in his truck. Appellant referred to himself as a "gun enthusiast." (May 10, 2021 Tr. at 28.)

## II. MOOTNESS

{¶ 18} Before I address appellant's assignments of error, I must address the conclusion of the majority that the appeal is mooted by the expiration of the CSPO on April 6, 2022.

{¶ 19} In *Cyran v. Cyran*, 152 Ohio St.3d 484, 2018-Ohio-24, the Supreme Court of Ohio held that in the absence of demonstrated legal collateral consequences, the collateral consequences exception to the mootness doctrine does not apply to an expired domestic violence civil protection order. *Id.* at ¶ 14. The court also declined to establish a rebuttable presumption that an appeal from an expired domestic violence civil protection order is not moot. *Id.* at ¶ 13.

{¶ 20} In *Cyran,* appellant argued that appellee had sought the domestic violence civil protection order only as leverage for herself in future post-divorce proceedings. He also claimed that he faced the possibility of collateral consequences with respect to his concealed firearm permit and his credit report as well as his ability to obtain housing, drive certain vehicles, and obtain future employment. In affirming the dismissal of the appeal, the Supreme Court rejected appellant's argument:

> [Appellant] does not demonstrate or argue that he has suffered any consequences. Rather, he argues that the possibility of future collateral consequences should preserve his appeal of the expired order. We are not convinced. Speculation is insufficient to establish a legally cognizable interest for which a court can order relief using the collateral-consequences exception to the mootness doctrine.

> The presence of a disagreement, however sharp and acrimonious it may be, is insufficient to create an actual controversy if the parties to the action do not have adverse legal interests.

(Internal citation and quotations omitted.) *Id*. at ¶ 11, ¶ 14.

{¶ 21} Though *Cyran* sets forth the general rule that an appeal from an expired CSPO is moot, the language used by Supreme Court in the decision suggests relief under the collateral consequences exception to the mootness doctrine may be available if appellant argues and proves that a legally cognizable interest will be affected by the CSPO. *See A.F. v. R.A.T*, 10th Dist. No. 20AP-23, 2021-Ohio-2568, ¶ 7, (The appeal is moot because "the CPOs appealed expired in December 2020, there is no indication that appellee has sought an extension of the orders, and appellants have not argued or otherwise demonstrated legal collateral consequences from the CPOs."). I believe appellant established that a legally cognizable interest will be affected by the expired CSPO in this case.

{¶ 22} In issuing the CSPO against appellant, the trial court found appellant committed menacing by stalking in violation of R.C. 2903.211 when he "knowingly engaged in a pattern of conduct that caused the Petitioner mental distress." (Emphasis deleted.) (May 19, 2021 Order of Protection at 6.) At the hearing before the magistrate, appellant expressed his concerns regarding collateral consequences arising from the issuance of a CSPO:

> I'm currently working for a company called Global Systems Technology where I am a vice president of government operations and business development, and I'm proud to say we won a $300 million contract on Friday to support the Department of Homeland Security. I solve national security types of problems, higher level, related to chemical, biological, radiological, nuclear, and explosives. Maintaining of clearance is important for me for my position.
> Plus, you know, it's -- it's also -- you know, like I said, I'm a gun enthusiast. It's also -- it would also hurt my security clearance. But I'm -- I'm -- I'm done with her.

(May 10, 2021 Tr. at 28, 53.)

{¶ 23} Unlike the appellant in *Cyran*, appellant herein provided unrebutted testimony that the CSPO "would * * * hurt my security clearance." (Tr. at 53.) Appellant's testimony also establishes that his employment as a civilian contractor depends on maintaining a security clearance. A review of the relevant federal regulations permitting civilian access to classified materials reveals that appellant's concerns are valid. For example, 32 C.F.R. 147.12 requires consideration of criminal conduct, whether charged or uncharged in assessing an applicant's security risk,[2] and 32 C.F.R. 147.7 requires consideration of certain personal conduct in the application process.[3] The relevant regulations also permit reinvestigation of a civilian contractor's security clearance at any time, and require reinvestigation within five years of a prior investigation. *See* 32 C.F.R. 147.18-24, subpart B, attachment C.[4] Thus, the expired CSPO remains a threat to appellant's security clearance and his current employment as a civilian contractor. The regulations further provide that an order from this court vacating the CSPO will mitigate the negative impact of the expired CSPO, as such an order is equivalent to acquittal. *Id.*

{¶ 24} Based upon appellant's testimony and the relevant federal regulations, which have the force and effect of law with regard to appellant's security clearance and federal employment, appellant has established that the findings made by the trial court in granting

---

[2] Title 32 C.F.R. 147 Subpart A, entitled "ADJUDICATIVE GUIDELINES FOR DETERMINING ELIGIBILITY FOR ACCESS TO CLASSIFIED INFORMATION, provides at "Guideline J-Criminal conduct" as follows:

(a) The concern: A history or pattern of criminal activity creates doubt about a person's judgment, reliability and trustworthiness.

(b) Conditions that could raise a security concern and may be disqualifying include: (1) *Allegations or admissions of criminal conduct, regardless of whether the person was formally charged*; * * *.

(c) *Conditions that could mitigate security concerns include:*

* * *

(5) *Acquittal*. (Emphasis added.)

[3] Pursuant to 32 C.F.R. 147.7, "[c]onditions that could raise a security concern and may be disqualifying also include:

* * *

(4) *Personal conduct* * * * that may increase an individual's vulnerability to coercion, exploitation, or duties, such as engaging in activities which, if known, may * * * render the person susceptible to blackmail." (Emphasis added.)

[4] Title 32 was amended effective September 2022, but the relevant language was not changed.

the CSPO create an imminent threat to a legally cognizable interest. Absent reversal on appeal, those findings are final and unimpeachable. Because appellant has produced evidence that his security clearance and employment would be negatively affected by the findings of fact underlying the CSPO, and because the relevant federal regulations establish a reversal of the trial court's order would mitigate the negative affect, appellant has demonstrated legal collateral consequences sufficient to invoke the collateral consequences exception to the mootness doctrine. Under the particular circumstances of this case, I would find that the expiration of the CSPO did not deprive this court of jurisdiction to review the merits of appellant's appeal.

## III. LEGAL ANALYSIS

{¶ 25} In each of appellant's assignments of error, appellant argues, for slightly different reasons, the trial court abused its discretion in granting appellee's petition because appellee presented insufficient evidence to support the CSPO and the CSPO was against the manifest weight of the evidence. I disagree.

{¶ 26} A decision to grant a CSPO is reviewed for an abuse of discretion. *Guthrie v. Long*, 10th Dist. No. 04AP-913, 2005-Ohio-1541, ¶ 9. When considering whether a CSPO is against the manifest weight of the evidence, an appellate court is guided by a presumption that the findings of the trier of fact are correct. *Lias v. Beekman*, 10th Dist. No. 06AP-1134, 2007-Ohio-5737, ¶ 20. The underlying rationale of giving deference to the findings of a trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Id.* The discretionary power of this court to grant a new trial when a CSPO has been issued by a trial court should be exercised only in the exceptional case in which the evidence weighs heavily against the order. *Holt v. Feron*, 3d Dist. No. 9-17-43, 2018-Ohio-3318, ¶ 17; *Jones v. Hunter*, 11th Dist. No. 2008-P-0015, 2009-Ohio-917, ¶ 23.

{¶ 27} R.C. 2903.214 prescribes the requirements for a CSPO petition. " '[R.C. 2903.214] provides that a petitioner seeking a civil stalking protection order must demonstrate that the respondent engaged in the offense of menacing by stalking, in violation of R.C. 2903.211.' " *Lias* at ¶ 13, quoting *Podeweltz v. Rieger*, 2d Dist. No. 21725, 2007-Ohio-1513, ¶ 28. R.C. 2903.211(A)(1) provides that "[n]o person by engaging in a

pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm * * * or cause mental distress to the other person." The burden of proof under R.C. 2903.214 requires a petitioner to establish, by a preponderance of the evidence, that the respondent engaged in conduct constituting menacing by stalking. R.C. 2903.214(C). *Griga v. Dibenedetto*, 1st Dist. No. C-120300, 2012-Ohio-6097.

{¶ 28} "When determining what constitutes a pattern of conduct 'courts must take every action into consideration even if * * * some of the person's actions may not, in isolation, seem particularly threatening.' " (Internal citation and quotations omitted.) *Collins v. Vulic*, 10th Dist. No. 20AP-528, 2021 Ohio App. Lexis 3261 (Sept. 23, 2021), *8. "One incident alone is not sufficient to establish a pattern of conduct under R.C. 2903.211." *Collins* at *7, citing *Barium & Chems., Inc. v. Miller*, 7th Dist. No. 14JE0030, 2016-Ohio-5656, ¶ 15, citing *State v. Scruggs*, 136 Ohio App.3d 631, 634 (2d Dist.2000).

{¶ 29} For purposes of the offense of menacing by stalking, "mental distress" is defined as: "Any mental illness or condition that involves some temporary substantial incapacity; [or] [a]ny mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services." R.C. 2903.211(D)(2). Pursuant to R.C. 2901.22(B), "[a] person acts knowingly * * * when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."

{¶ 30} In *State v. Horsley*, 10th Dist. No. 05AP-350, 2006-Ohio-1208, ¶ 47, this court determined that a CSPO may be issued if it is shown that an offender, by engaging in a pattern of conduct, knowingly caused the victim to believe that the offender would cause the victim mental distress. *See also Griga*, 2012-Ohio-6097. In other words, actual mental distress on the part of a victim is not a required element of menacing by stalking. *Id.* In *Griga*, for example, the court held that appellant's multiple threats to financially ruin appellee, followed by his appearance at appellee's workplace, provided sufficient evidence to support the judgment that the appellant had engaged in a pattern of conduct that knowingly caused appellee to believe appellant would cause him mental distress. *Id.* at ¶ 16.

{¶ 31} In overruling appellant's objections to the magistrate's decision, in part, the trial court agreed with the magistrate that the weight of the evidence showed appellant

engaged in a pattern of conduct which knowingly caused appellee mental distress. The evidence in the record supports the trial court's conclusion.

{¶ 32} Appellant sent multiple correspondence to appellee and others threatening to aid authorities in maximizing her legal penalties and warning that her life as a "normal citizen was over" unless she rekindled the relationship between the parties. (Petitioner's Ex. at 10.) Appellant admitted he sent embarrassing nude photographs of appellee to her family members. The record also shows that appellant's ex-boyfriend was granted a protection order against appellant, and that appellant sent him unsolicited information regarding appellee's participation in escort services. All of these instances of harassment occurred within a period of less than two years.

{¶ 33} Appellant's correspondence evidence his desire to facilitate appellee's arrest and prosecution for drug offenses. In a text message appellant sent to one of appellee's friends, appellant takes credit for having appellee arrested and expresses his satisfaction for doing so. Our review of the text messages and emails admitted into evidence reveals appellant's primary goal was to ruin appellee's life and cause her to suffer serious mental distress as retribution for deceiving and then rejecting him.

{¶ 34} For example, appellant admitted that he encouraged a Deputy Sheriff to arrest appellee on a bench warrant prior to a hearing she attended in one of the civil cases appellant had filed against her. Had appellant genuinely wished to pursue his civil remedy to judgment, rather than causing appellee mental distress, he would not have taken steps that delayed the hearing. At the CSPO hearing, appellant tried to deny he also caused appellee to be arrested in 2019, but the magistrate told appellant: "I don't find those responses to be credible." (Tr. at 46.) Appellant also admitted that prior to the CSPO hearing in this case, he approached a Deputy Sherriff at the courthouse in an effort to have appellee jailed for a prior offense. Appellant did not deny that the Deputy Sheriff detained appellee temporarily until another police officer arrived and it was determined that no jail time had been ordered. The following exchange regarding the incident is typical of appellant's unapologetic behavior toward appellee:

> [M.B.]: And when I got here today, he was trying to convince the sheriff's deputy I had to serve five days forthwith in jail for the -- for the time I went –

THE MAGISTRATE: Mr. Mettke, did you do that today? Did you talk to the sheriff about taking her into custody?

MR. METTKE: I did. If you'll let me -- if you look at the -- if you look on -- this is -- that's why, if you look at A. (Indicating.)

THE MAGISTRATE: Mr. Mettke, I don't understand. You say you don't want to have any involvement with her.

MR. METTKE: I don't want to have any.

THE MAGISTRATE: You don't want to have any contact; but everything you do seems to be about trying to obtain a pound of flesh from her, * * *
MR. METTKE: She took a -- she took a pound of flesh from me.

(Tr. at 54.)

{¶ 35} The magistrate found appellee's testimony credible, and that appellant's testimony was not. In making this finding, the magistrate found "Petitioner to generally be credible and Respondent to be evasive and at times not credible [and] * * * Petitioner was more credible than Respondent." (Emphasis deleted.) (May 19, 2021 Mag.'s Recommended Order of Protection at 6, 8.) The trial court noted that both parties provided inconsistent testimony at the hearing, but the trial court ultimately agreed with the magistrate stating: "Notwithstanding that Petitioner may have acted to deceive Respondent during the parties' brief romantic relationship, and may have had prior criminal charges and personal issues, the Court, after viewing her testimony and judging it under the proper test, finds that her testimony before the magistrate was credible." (Nov. 2, 2021 Decision & Entry at 12.)

{¶ 36} Appellant argues that public policy prevented the trial court from issuing a CSPO against him because he was simply exercising his criminal and civil remedies against appellee. I disagree.

{¶ 37} Contrary to appellant's claim, his right to prosecute civil claims or procure criminal proceedings against others in Ohio is not unfettered. Indeed, Ohio common law authorizes a cause of action for abuse of process, where one person uses legal process against another for an ulterior motive. *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.,*

68 Ohio St.3d 294 (1994). A cause of action for malicious civil and criminal prosecution is also recognized in Ohio common law where one person either commences a civil action against another without probable cause or procures criminal proceedings against another without probable cause. *Id. See also Ash v. Ash*, 72 Ohio St.3d 520, 522 (1995). I find no merit in appellant's public policy argument in this case as R.C. 2903.211(A)(1) and 2903.214 establish the relevant public policy in Ohio with respect to menacing by stalking and CSPO's. There is no exception in the statutory law for prohibited conduct that occurs in connection with a civil action or criminal prosecution. If the general assembly had so intended, the statutory language would reflect that intent.

{¶ 38} This court has previously rejected an argument similar to appellant's. In *Wildi v. Wildi*, 159 Ohio App.3d 568, 2005-Ohio-257, ¶ 1 (10th Dist.), a husband was granted a CSPO against wife. The wife claimed that her offending conduct occurred while she was acting as her own private investigator in connection with her divorce case, not as a stalker. The trial court rejected the argument stating that wife's stalking behavior was not legally excusable, regardless of her purpose. *Id.* In wife's appeal, this court held that neither the domestic relations division nor the criminal code precluded a party from seeking a stalking civil protection order in the general division of a court while an action was pending in the domestic relations division.

{¶ 39} Pursuant to this court's decision in *Wildi*, even if the trial court believed appellant's claim that all of his misconduct occurred in prosecution of civil and criminal actions against appellee, appellee was not precluded from seeking CSPO if the evidence showed that appellant had engaged in a pattern of conduct which knowingly caused mental distress or caused appellee to believe that appellant would cause her mental distress. *Id.* Moreover, the weight of the evidence produced at the hearing establishes that appellant engaged in various forms of harassment calculated to inflict emotional distress on appellee that were unrelated to any civil or criminal proceeding pending against appellee, such as sending embarrassing nude photographs of appellee to her grandmother and aunt, sharing embarrassing details of appellee's involvement with escort services with her ex-boyfriend, contacting appellee by email and text after she had told him to leave her alone, and sending threatening and boastful correspondence to others promising to ruin appellee's life.

{¶ 40} " 'The goal of R.C. 2903.214 is to allow the police and the courts to act *before* a victim is harmed by a stalker.' "  (Emphasis sic.)  *Bey v. Rasawehr*, 161 Ohio St.3d 79, 2020-Ohio-3301, ¶ 16, quoting *Irwin v. Murray*, 6th Dist. No. L-05-1113, 2006-Ohio-1633, ¶ 15.  In my view, the greater weight of the evidence produced in the trial court reveals a pattern of troubling behavior by appellant that meets the definition of menacing by stalking under R.C. 2903.211(A)(1).  The preponderance of the evidence supports a finding that appellant engaged in a pattern of conduct that caused appellee to believe appellant would cause her mental distress and that appellant's pattern of conduct has, in fact, caused appellee mental distress requiring treatment.  The greater weight of the evidence also substantiated appellee's claim that she fears appellant and that she is in need of a CSPO to protect her from future conduct of appellant designed to cause her further mental distress.

{¶ 41} Appellant's text messages and emails to appellee and others demonstrates a persistent spirit of vindictiveness towards appellee and an insatiable need to make appellee suffer.  Though appellant told the magistrate he had not seen appellee for several months and has no desire to have any further contact with appellee, appellant admitted that he tried to have appellee arrested prior to the CSPO hearing in this case.  Appellee informed the court that a hearing is scheduled for "tomorrow" in appellant's pending civil action against her in small claims court.  (Tr. at 14.)  Thus, the weight of the evidence demonstrates appellant's pattern of harassing conduct is ongoing.

{¶ 42} Because the CSPO is supported by sufficient evidence and not against the manifest weight of the evidence, the trial court did not abuse its discretion when it granted appellee's petition and issued appellee a CSPO against appellant.  Accordingly, I would overrule appellant's first, second, and third assignments of error and affirm the judgment of the trial court.

## IV. CONCLUSION

{¶ 43} Based on the foregoing, I would find that the appeal was not mooted by the expiration of the CSPO, overrule the first, second, and third assignments of error, and affirm the judgment of the trial court.  Because the majority does not, I respectfully dissent.

———————————————