**[Cite as *Bey v. Rasawehr*, 2019-Ohio-57.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

JONI BEY,

      **PETITIONER-APPELLEE,**               **CASE NO. 10-18-02**

      v.

JEFFREY RASAWEHR,               **O P I N I O N**

      **RESPONDENT-APPELLANT.**

---

REBECCA RASAWEHR,

      **PETITIONER-APPELLEE,**               **CASE NO. 10-18-03**

      v.

JEFFREY RASAWEHR,               **O P I N I O N**

      **RESPONDENT-APPELLANT.**

---

**Appeals from Mercer County Common Pleas Court**
**Trial Court Nos. 17-CV-013 and 17-CV-014**

**Judgments Affirmed**

**Date of Decision: January 14, 2019**

---

**APPEARANCES:**

    *Dennis E. Sawan* **for Appellant**

    *Ryan K. Miltner* **for Appellee**

    *Eugene Volokh, Pro Hac Vice*, **First Amendment Clinic,**
        **UCLA School of Law**

**SHAW, J.**

{¶1} Respondent-appellant, Jeffrey Rasawehr ("Rasawehr"), appeals the January 18, 2018 Orders of Protection issued against him by the Mercer County Common Pleas Court. On appeal, Rasawehr claims: that the condition set forth in the trial court's Orders of Protection amounts to an unconstitutional prior restraint and restriction on the exercise of his First Amendment Right to Free Speech; that the trial court's Orders of Protection are void for vagueness; that the trial court exceeded its discretion in fashioning the Orders of Protection because the relief ordered was not rationally related to the facts of the case; and that the trial court abused its discretion in issuing the Orders of Protection because the Petitioners failed to meet the statutory requirements for acquiring the Orders of Protection.

*Facts and Procedural History*

{¶2} This consolidated appeal arises from two cases at the trial court level involving petitions seeking civil stalking protection orders ("CSPO") filed by Joni Bey ("Joni"), Rasawehr's sister, in appellate case number 10-18-02, and Rebecca Rasawehr ("Rebecca"), Rasawehr's mother, in appellate case number 10-18-03.

{¶3} On November 16, 2017, Joni and Rebecca each filed a petition for a CSPO pursuant to R.C. 2903.214 naming Rasawehr as the Respondent. In a supplement to her petition, Joni identified nine separate incidents between June 2016 and November 2017 during which Rasawehr had allegedly made claims on

various internet websites and social media outlets that Joni killed her husband, Raymond Bey, and/or participated in a conspiracy with Mercer County officials to "cover-up" the circumstances of her husband's death. Joni also alleged that in November 2017 Rasawehr made a false complaint to Mercer County Children Services stating that Joni's son was endangered from "extreme malnourishment." (Bey Petition, Doc. No. 1).

**{¶4}** Similarly, in a supplement to her petition, Rebecca identified fourteen separate incidents between June 2016 and November 2017 during which Rasawehr had allegedly made claims on various internet websites and social media outlets that Rebecca killed her husband, Rasawehr's father, Kenneth Rasawehr, and that she was involved in other acts of conspiracy and corruption with Mercer County officials related to the death of her husband. In addition, both Joni and Rebecca also claimed that Rasawehr hired a private investigator, who attempted to interview them under false pretenses by claiming he was an out-of-state attorney investigating Rasawehr.

*Evidence Presented at the Hearing*

**{¶5}** On December 4, 2017, the trial court held a hearing on both petitions, where Joni and Rebecca testified.

**{¶6}** Joni testified that her husband, Raymond, died on November 4, 2015, and that Rasawehr publically accused her of contributing to his death. She identified

comments Rasawehr had made in editorials/articles on the Lima News website and postings he had composed on Craigslist in the summer of 2016 reiterating these accusations. (Dec. 4, 2017 Hrg., Ex. 6 Lima News Comments dated July 30, 2016; Ex. 7 craigslist posting dated June 15, 2016; Ex. 8 craigslist posting dated June 6, 2016).

{¶7} She also identified a photograph of a billboard located near her home. (Dec. 4, 2018 Hrg., Ex. 3). Joni described the billboard as an advertisement for the website "countycoverup.com." Specifically, the billboard depicted a portrait style picture of Rasawehr, comprising nearly a third of the ad space, and stated "Jeff Rasawehr says, 'LEARN ABOUT COUNTY CORRUPTION & COVER-UPS AT…' CountyCoverUp.com." (Id.)(emphasis in original).

{¶8} At the hearing, Joni also identified several postings from the website countycoverup.com that accused her of killing and/or "let[ting] her husband die," and further alleged that Joni participated in a conspiracy with Mercer County officials to suppress the details of Raymond's death from the public. These website postings also claimed that Joni is a felon and on a Florida's "Most Wanted" list. (Dec. 4, 2017 Hrg., Ex. 1 website posting dated Nov. 14, 2017; Ex. 4 website posting dated Nov. 8, 2017; Ex. 5 website posting dated Oct. 5, 2017).

{¶9} In addition to the website postings on countycoverup.com, which purported to be authored by Rasawehr and identified Joni as "my sister," and both

Rebecca and Joni, as "my white trash relatives" and "my corrupt family,[1]" the website also included a report written by Private Investigator, Jack Bastian, who Rasawehr hired to complete a document entitled "Death Investigation of Raymond Bey." (Ex. 4 website posting dated Nov. 8, 2017; Ex 9 craigslist posting dated June 4, 2016; Ex. 13 website posting dated Sept. 13, 2017 ). This "death investigation" reiterated Rasawehr's claim that Raymond died under "suspicion of foul play" and suggested Joni's nefarious involvement in his death. (Id.)

{¶10} Joni recalled that Jack Bastian had come to her home in late October or early November 2017, claiming that he was a private investigator with a law firm in North Carolina.[2] According to Joni, Bastian indicated that Rasawehr was part of a lawsuit and testimony of a character witness for Rasawehr was needed for the case. Bastian initially asked Joni questions about Rasawehr, however, Joni recalled that approximately fifteen minutes into the conversation Bastian "changed his tune" and began questioning her about Raymond's death. (Dec. 4, 2017 Hrg. at 22). Joni at first politely asked Bastian to leave, but when Bastian refused Joni began to yell at Bastian to leave, which he eventually did.

{¶11} Joni also testified that a representative from Children Services had come to her home regarding a complaint made by an unidentified person claiming

---

[1] Joni further testified that there was "no doubt in [her] mind" that Rasawehr was the creator of countycoverup.com and the postings. (Dec. 4, 2017 Hrg. at 36).

[2] The record indicates that Bastian is an Ohio licensed Private Investigator whose office is in Piqua, Ohio.

that her thirteen-year-old son was "severely malnourished" and that she had drugs in the home. Joni testified that she believed that Rasawehr was the person who made the complaint.

{¶12} With regard to how Rasawehr's actions have affected her, Joni explained that the billboard was placed in such a location that she and her son could not avoid driving by it on a daily basis. She expressed fear that her son would see the website postings or be bullied at school. Joni further testified that the postings affected her mental health. Specifically, she testified that the website postings made her feel "sick" and a "nervous wreck," and that she has trouble leaving the house due to the humiliation she felt living in a small community and knowing others living there had viewed the website postings. (Dec. 4, 2017 Hrg. at 37-38). She further revealed that she attended weekly counseling sessions to cope with the situation, took an anti-depressant, and expressed that life had become a "daily struggle." (Id. at 42).

{¶13} Rebecca's testimony also revealed that Rasawehr began making similar accusations about her contributing to the death of her husband, Kenneth Rasawehr, who died on January 9, 2008, in craigslist postings in the summer of 2016. In one craigslist posting, under that "rants & raves" category in the "personals" section entitled "why I post by jeff rasawehr," Rasawehr calls his family "white trash" and outlined his accusations that "my mother sat my father in a chair

and left him to die instead of calling for help—but the county as usual did nothing and now her daughter Joni Bey has done the same thing with her husband." (Ex. 9 craigslist posting dated June 4, 2016). In the same posting, Rasawehr further stated that "BECKY RASAWEHR—is evil she will never get it—but if this evil can end— what a great revenge." (Id.)

{¶14} Rebecca explained that she first learned of the billboard advertising countycoverup.com from her grandchildren, Rasawehr's children. Rebecca also identified postings on countycoverup.com that she believed Rasawehr created. These postings implicated her in contributing to her husband's death and conspiring with Mercer County officials to hide "suspicious circumstances." (Dec. 4, 2017 Hrg., Ex. 10 website posting dated Nov. 3, 2017; Ex. 11 website posting dated Nov. 2, 2017; Ex. 12 website posting dated Oct. 1, 2017; Ex. 12 website posting dated September 13, 2017 ). The postings also alleged that in regards to Raymond Bey's death, "Joni learned well from her mother Becky!" (Dec. 4, 2017 Hrg., Ex. 10 website posting dated Nov. 3, 2017). At the conclusion of these postings, a "Call to Action" appears encouraging citizens of Mercer County to get involved in the investigation of Rasawehr's claims regarding Joni and Rebecca and the alleged "corruption" of Mercer County officials.

{¶15} Rebecca testified that Rasawehr's internet posts affected her on a daily basis, characterizing Rasawehr's conduct as bullying and harassment that

never stops. Rebecca explained that Rasawehr's actions have caused her to "go on blood pressure medicine" and required her to "take antianxiety medicine." (Dec. 4, 2017 Hrg. at 84). She also stated that in the past Rasawehr had made her fear for her physical safety, which prompted her to install an alarm system and security lights.

{¶16} Both Joni and Rebecca sought relief in the form of the trial court ordering Rasawehr to refrain from posting about them on any social media service, website, discussion board, or similar outlet, and from sending them text messages and emails.

{¶17} For his part, Rasawehr elected to invoke his Fifth Amendment right and did not testify.

{¶18} On December 8, 2017, Joni and Rebecca each filed a Notice of Subsequent Events, alleging telephone misconduct by Rasawehr following the December 4, 2017 hearing. The specific incident was alleged to have occurred the day after the hearing on the petitions where Joni had revealed during her testimony that she had quit a job due to the stress and humiliation she felt from Rasawehr's internet postings and had disclosed her prior place of employment. The next day, Joni's former employer received a telephone call. The unidentified male caller requested information regarding Joni's employment.

**{¶19}** In an affidavit attached to the Notice, the employee of the company who answered the telephone call averred that she "googled" the number that appeared on the caller identification and the search results "suggested that the number is associated with Jeff Rasawehr." (10-18-02, Doc. No. 14; 10-18-03, Doc. No. 11).

**{¶20}** On January 18, 2018, the trial court granted Joni and Rebecca's Petitions for CSPOs. Specifically, the trial court found that:

> **Based upon the evidence presented, the court finds that the respondent Jeffrey Rasawehr authored the internet postings as contained in petitioners' exhibits consistent with the testimony offered by each of the petitioners and the respondent's failure to present any evidence to the contrary. By doing so, the respondent engaged in a pattern of conduct which proximately caused each of the petitioners fear and mental distress, and respondent did so with the knowledge, if not the intent, that his posting of the information would cause each of the petitioners fear and mental distress. The mental distress suffered by each of the petitioners has included losing sleep, unwanted communication, and in response to questions by others who have viewed the information on the various websites, their resulting reluctance to be seen in public due to embarrassment, worry, anxiety, and humiliation as evidenced by petitioner Bey seeking and receiving psychological counseling and petitioner Rebecca Rasawehr taking anxiety medication. The anxiety of each petitioner has risen to the extent that each fears physical harm may be inflicted upon them by the respondent. In arriving at such findings of fact, the court has concluded that the petitioners have sustained their burdens of proof, and nothing that the respondent presented by way of evidence or argument outweighs what petitioners presented.**

(Jan. 18, 2018 Orders of Protection).

In addition to the standard orders requiring Rasawehr to have no contact with either Joni or Rebecca for a period of five years, the trial court also issued the following as a specific condition to the Orders of Protection:

> **RESPONDENT SHALL REFRAIN from posting about Petitioners on any social media service, website, discussion board, or similar outlet or service and shall remove all such postings from CountyCoverUp.com that relate to Petitioners. Respondent shall refrain from posting about the deaths of Petitioners' husbands in any manner that expresses, implies, or suggests that the Petitioners are culpable in those deaths.**

{¶21} It is from these Orders of Protection that Rasawehr appeals, presenting the following assignments of error.

**ASSIGNMENT OF ERROR NO. 1**

**THE TRIAL COURT'S ORDER EXCEEDS THE COURT'S DISCRETION BECAUSE IT IS AN UNCONSTITUTIONAL PRIOR RESTRAINT AND RESTRICTION ON THE EXERCISE OF THE APPELLANT'S FIRST AMENDMENT RIGHT TO FREE SPEECH.**

**ASSIGNMENT OF ERROR NO. 2**

**THE TRIAL COURT'S ORDER IS VOID FOR VAGUENESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION BECAUSE IT DOES NOT SUFFICIENTLY APPRISE THE APPELLANT OF WHAT CONDUCT WOULD SUBJECT HIM TO CRIMINAL CONTEMPT SANCTIONS.**

**ASSIGNMENT OF ERROR NO. 3**

**THE COURT ABUSED ITS' DISCRETION BY ORDERING RELIEF THAT WAS NOT RATIONALLY RELATED TO THE**

**FACTS OF THE CASE AND THE COURT EXCEEDED ITS DISCRETION TO ORDER RELIEF BECAUSE THE OHIO CSPO STATUTE ONLY PERMITS RELIEF THAT IS ABSOLUTELY NECESSARY FOR THE SAFETY AND THE PROTECTION OF THE PETITIONERS.**

**ASSIGNMENT OF ERROR NO. 4**

**THE TRIAL COURT ABUSED ITS' DISCRETION IN ORDERING A CSPO BECAUSE THE APPELLEES FAILED TO MEET THE REQUIREMENTS UNDER OHIO LAW FOR THE GRANTING OF A CSPO.**

**{¶22}** For ease of discussion, we elect to address the assignments of error together.

*First, Second, Third and Fourth Assignments of Error*

**{¶23}** Before we address the arguments raised on appeal pertaining to the specific condition of the Orders of Protection, which Rasawehr claims violates his right to Free Speech, we will first address whether the evidence in the record supports the trial court's determination that the Petitioners satisfied their burdens in establishing that the CSPOs against Rasawehr were warranted.

*Standard of Review*

**{¶24}** Generally, when reviewing a trial court's decision to grant a CSPO, we will not reverse the decision absent an abuse of discretion. *Prater v. Mullins*, 3d Dist. Auglaize No. 2-13-04, 2013-Ohio-3981, ¶ 5. An abuse of discretion implies

that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St .3d 217, 219 (1983).

**{¶25}** A civil stalking protection order can be sought under R.C. 2903.214 where the respondent engaged in a violation of R.C. 2903.211, which defines menacing by stalking. *See* R.C. 2903.214(C). The petitioner has the burden to prove the elements of menacing by stalking by a preponderance of the evidence. *See Felton v. Felton*, 79 Ohio St.3d 34, 41-42 (1997) (General Assembly intended to apply the usual preponderance of the evidence standard to civil domestic violence protection order where it failed to specify another standard). *Compare* R.C. 2903.214(E)(1)(a) (no standard set forth for civil stalking protection order) to (b) (where clear and convincing evidence is required for the court to order electronic monitoring of respondent due to continuing danger).

*Relevant Law*

**{¶26}** The menacing by stalking statute provides:

**No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person.**

R.C. 2903.211(A)(1).

Therefore, to be entitled to a CSPO, the petitioner must establish by a preponderance of the evidence that the respondent (1) engaged in a pattern of

conduct (2) that the respondent knew (3) would cause the person to be protected under the CSPO to believe that the respondent would cause the person physical harm or mental distress. *Wilson v. Lyon*, 3d Dist. Marion No. 9-16-17, 2016-Ohio-7734, ¶ 13.

**{¶27}** The term "pattern of conduct" is defined as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1). Even though the phrase "closely related in time" is not defined, appellate districts have concluded that "[i]n failing to delimit the temporal period within which the two or more actions or incidents must occur, the statute leaves that matter to be determined by the trier of fact on a case-by-case basis." *Wilson*, *supra*, citing *Ellet v. Falk*, 6th Dist. Lucas No. L-09-1313, 2010-Ohio-6219, ¶ 22, citing *State v. Dario*, 106 Ohio App.3d 232, 238 (1st Dist.1995).

**{¶28}** Knowingly is defined in R.C. 2901.22(B), which provides that "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." "Consequently, a petitioner seeking a CSPO under [Ohio's menacing by stalking statute] is not required to prove purpose or

intent to cause physical harm or mental distress." *Wilson*, *supra*, quoting *Echemann v. Echemann*, 3d Dist. Shelby No. 1-15-19, 2016-Ohio- 3212, ¶ 36.

{¶29} With regard to the last element to be proven in order for a person to be entitled to a CSPO, R.C. 2903.211(A)(1) does not require the petitioner to demonstrate that he or she actually suffered physical harm. The petitioner merely has to demonstrate that the respondent knowingly caused the petitioner to believe that the respondent would cause him or her physical harm. R.C. 2903.211(A)(1). Further, the statute defines "mental distress" as any of the following (a) "[a]ny mental illness or condition that involves some temporary substantial incapacity;" and (b) "[a]ny mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services." R.C. 2903.211(D)(2).

{¶30} Notably, "mental distress for purposes of menacing by stalking is not mere mental stress or annoyance." *Caban v. Ransome*, 7th Dist. No. 08 MA 36, 2009-Ohio-1034, ¶ 29. While R.C. 2903.211(D)(2) requires evidence that the person to be protected under the CSPO developed a mental condition that involved some temporary substantial incapacity or that would normally require mental health services, the statute does not, however, require proof that the victim sought or received treatment for mental distress. *State v. Szloh*, 189 Ohio App.3d 13, 2010-

Ohio-3777, ¶ 27 (2d Dist.).  Nor does the statute require that the mental distress be totally or permanently incapacitating or debilitating. *See Retterer*, 2012–Ohio–131, ¶ 41.

**{¶31}** Rather, "[i]ncapacity is substantial if it has a significant impact upon the victim's daily life." *State v. Horsley*, 10th Dist. Franklin No. 05AP-350, 2006-Ohio-1208, ¶ 48.  Thus, testimony that the respondent's conduct caused the person to be protected under the CSPO considerable fear and anxiety can support a finding of mental distress under R.C. 2903.211.  *See Horsley* at ¶ 47–48; *Middletown v. Jones*, 167 Ohio App.3d 679, 2006-Ohio-3465, at ¶ 8. Additionally, evidence of changed routine can corroborate a finding of mental distress.  *Smith v. Wunsch*, 162 Ohio App.3d 21, 2005-Ohio-3498, ¶ 20 (4th Dist.) ¶ 20, citing *Noah v. Brillhart*, 9th Dist. Wayne No. 02CA0050, 2003-Ohio-2421, ¶ 16.

*Evidence Supporting the Issuance of the CSPOs*

**{¶32}** Based upon the evidence previously set forth in this opinion, we find that the trial court did not err in finding that both Joni and Rebecca proved by a preponderance of the evidence that they were each entitled to have a CSPO issued against Rasawehr.  The trial court specifically found that Rasawehr's conduct violated each of the statutory elements set forth in R.C. 2903.211(A)(1), the menacing by stalking statute, with respect to both Joni and Rebecca, and we further note that the evidence in the record supports the trial court's findings in this regard.

{¶33} On appeal, Rasawehr claims that Joni and Rebecca failed to present sufficient evidence that he authored and/or created the internet postings and website at issue. However, the evidence in the record established that not only did both Joni and Rebecca testified that they believed Rasawehr was the creator and curator of the postings on www.countycoverup.com and the author of the Craig's List postings and the comments on the Lima News, but Rasawehr's first and last name also appeared on all the postings. Moreover, some of the postings specifically identified Joni and Rebecca as Rasawehr's family members and the billboard sign displayed near Joni's home included an oversized portrait of a man, whom Joni and Rebecca identified as Rasawehr, and included the phrase "Jeff Rasawehr says, 'LEARN ABOUT COUNTY CORRUPTION & COVER-UPS AT…' CountyCoverUp.com." (Dec. 4, 2018 Hrg., Ex. 3) (Emphasis in original). Based on these exhibits, and in light of the fact that Rasawehr presented no evidence to refute Joni's and Rebecca's identity of him as the author and/or creator of the internet postings, we cannot find that the trial court abused its discretion in determining that the record supported a finding, by the requisite burden of proof, that Rasawehr was the person who engaged in this pattern of conduct knowing that this conduct would cause Joni and Rebecca mental distress.

{¶34} Rasawehr also argues that assuming he was creator/owner of CountyCoverUp.com, the content of the website consists of several topics besides

those related to the accusations that Joni and Rebecca caused their husbands' death and conspired with county officials to suppress the details of the deaths. Therefore, Rasawehr claims that the website was maintained for a legitimate purpose other than to simply harass the petitioners. However, none of these postings on purported other topics were presented as evidence at the hearing on the petitions. Again, the only evidence presented at the hearing support the trial court's finding that these posts were created solely with the intent to cause Joni and Rebecca mental distress. Accordingly, we find that the trial court did not abuse its discretion in issuing the CSPOs against Rasawehr.

*Rasawehr's Constitutional Challenges*

{¶35} On appeal, Rasawehr takes issue with the condition of the Orders of Protection which states as follows:

> **RESPONDENT SHALL REFRAIN from posting about Petitioners on any social media service, website, discussion board, or similar outlet or service and shall remove all such postings from CountyCoverUp.com that relate to Petitioners. Respondent shall refrain from posting about the deaths of Petitioners' husbands in any manner that expresses, implies, or suggests that the Petitioners are culpable in those deaths.**

{¶36} Rasawehr argues that the trial court exceeded its authority in fashioning a condition in the court order, which he claims: categorically prohibits a broad, sweeping class of future speech; provides for criminal penalties yet is

-17-

vague, ambiguous and overly broad; and provides for relief that is not rationally related to the evidence in the record.

{¶37} The relevant portions of the First Amendment to the United States and the Ohio Constitutions are as follows:

> **Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.**

First Amendment to the U.S. Constitution

> **Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press.  In all criminal prosecutions for libel, the truth may be given in evidence to the jury, and if it shall appear to the jury, that the matter charged as libelous is true, and was published with good motives, and for justifiable ends, the party shall be acquitted.**

Article I, Section 11, Ohio Constitution

{¶38} At the outset we note that several Ohio appellate districts have addressed constitutional challenges to R.C. 2903.11, Ohio's menacing by stalking statute, on the grounds that its proscription of conduct is vague, arbitrary, or violates the First Amendment, and have been found such arguments to be meritless. *See e.g.*, *State v. Plants*, 5th Dist. Tuscarawas No. 2009 AP 10 0054, 2010-Ohio-2930; *State v. Barnhardt*, 9th Dist. Lorain No. 05CA008706, 2006-Ohio-4531; *State v. Werfel*, 11th Dist. Lake Nos. 2002-L-101, 2002-L-102, 2003-Ohio-6958.

**{¶39}** As aptly stated by the Fifth Appellate District, underpinning the rationale stated in these cases is the acknowledgement that "although we all hold dear the First Amendment protections, we are all aware that freedom of speech is not absolute. As such, there are classes of unprotected speech i.e., threatening words, obscene speech, fighting words, speech that interferes with the rights of others, speech that creates a clear and present danger, and defamatory speech." *State v. Wieger*, 5th Dist. Stark No. 2008CA00132, 2009-Ohio-1391, ¶ 19.

**{¶40}** Likewise, the United States Supreme Court has long held that "otherwise proscribable criminal conduct does not become protected by the First Amendment simply because the conduct happens to involve the written or spoken word. *See e.g.*, *United States v. Alvarez*, 567 U.S. 709, 721 (2012) (plurality opinion) (noting that "speech integral to criminal conduct" remains a category of historically unprotected speech; accord *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949) ("[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." (citations omitted) ) ); *see also R.A.V. v. City of St. Paul*, 505 U.S. 377, 389 (1992) ("[W]ords can in some circumstances violate laws directed not against speech but against conduct (a law against treason, for example, is violated by telling the enemy the Nation's defense secrets) ....").

{¶41} Further, the United States Supreme Court recognized that not all speech is of equal First Amendment importance. It is speech on " 'matters of public concern' " that is "at the heart of the First Amendment's protection." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758 (1985), quoting *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978), citing *Thornhill v. Alabama*, 310 U.S. 88, 101 (1940). Rather, the First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. United States*, 354 U.S. 476, 484 (1957); *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964). "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964). In contrast, speech on matters of purely private concern is of less First Amendment concern. *Connick v. Myers*, 461 U.S. 138, 146-47.

{¶42} Here, R.C. 2903.211 clearly criminalizes specific conduct directed toward another person when done for an illegitimate purpose. As explained above, the unrefuted evidence presented by the petitioners supported the trial court's finding that the specific conduct, for which Rasawehr now asserts is expressive of a public concern and protected by the First Amendment, was not engaged in for a legitimate reason, but instead for an illegitimate reason born out of a vendetta

seeking to cause mental distress to his mother and sister and to exact personal revenge.

**{¶43}** Rasawehr also claims that the condition stated in the trial court's Orders of Protection is unconstitutionally void because it fails to define the proscribed conduct with sufficient definiteness to constitute adequate apprisal to preserve his due process rights. In other words, Rasawehr maintains that the condition fails to sufficiently convey information in order to understand what type of conduct he will be criminally prosecuted for engaging in. An order is unconstitutionally vague if persons "of common intelligence must necessarily guess at its meaning and differ as to its application * * *." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).

**{¶44}** In reviewing the specific language chosen by the trial court in the condition at issue we find Rasawehr's arguments unconvincing. It is clear from the language chosen that the trial court narrowly tailored the condition to redress the specific pattern of conduct that it found Rasawehr engaged in to knowingly cause Joni and Rebecca mental distress. And as previously stated, we conclude that the trial court's findings with regard to Rasawehr's conduct meeting the elements set forth in R.C. 2903.211 were supported by the uncontroverted evidence in the record.

**{¶45}** In the alternative, Rasawehr asserts that even if the foregoing constitutional challenges are rejected as to the section of the trial court's order to

"refrain from posting about the deaths of Petitioners' husbands in any manner that expresses, implies or suggests that the Petitioners are culpable in those deaths," that those same challenges should prevail against the section of the trial court's order stating that Rasawehr "shall refrain from posting about Petitioner on any social media service, website, discussion board, or similar outlet or service and shall remove all such postings from CountyCoverUp.com that relate to Petitioners."  We disagree.

**{¶46}** Rasawehr's primary argument is that the trial court's order is overbroad and thereby impossible to constitutionally enforce. On the contrary, it is our conclusion that a total ban as to all social postings, (related only to the Petitioners for a limited time), constitutes a far clearer notice as to the proscribed conduct and is consequently more effectively and fairly enforced than the previous section of the trial court's order, which will inevitably require an extremely nuanced interpretation and determination by both Rasawehr and potentially the trial court, as to whether any given posting referencing Petitioners "expresses, implies or suggests" that Petitioners are culpable. This is particularly true where Rasawehr's extensive history of targeting the Petitioners with such serious accusations on these social media sites would necessarily color any future references to Petitioners by Rasawehr as implicitly sarcastic, derogatory or intimidating no matter how superficially benign the references may appear to be at first glance.

**{¶47}** In this same context and given Rasawehr's history of social media abuse toward Petitioners, which history we note contains no references to Petitioners that were not deemed to be harmful, we also find the entirety of the trial court's order to be appropriately limited, by reference to the Petitioners only and for a limited time period. Moreover, we also find the trial court's entire order to be expressly consistent with the provisions of Article I, Section 11 of the Ohio Constitution set forth earlier, which in the same sentence affirming the right of every citizen to "freely speak, write, and publish his sentiments on all subjects," also expressly holds each citizen to be "*responsible for the abuse of the right.*" (Emphasis added.) This provision clearly contemplates that at some point a citizen's pattern of targeted, abusive and harmful exercise of the right, which we believe to be evident in the circumstances of this case, can constitutionally warrant an appropriate, limited and temporary forfeiture of the right such as the trial court has imposed in this instance.

**{¶48}** Finally, we also find the trial court's order regarding the social media postings to be entirely consistent with, and in fact, less restrictive than the generally Constitutionally accepted terms of the remaining portions of this and many other similar protection orders, which purport to broadly restrict the Respondent's movements, not only to within any proximity of the Petitioners, but also to within any proximity of numerous public venues and locations where the Petitioners may

happen to be, or even might be, whether or not Petitioners are actually present at those locations.

{¶49} For all of the foregoing reasons, the assignments of error are overruled and the judgments and orders of the trial court are affirmed.

**_Judgments Affirmed_**

**PRESTON, J., concurs.**

**/jlr**

**ZIMMERMAN, P.J., dissents in part and concurs in part.**

{¶50} In its Orders of Protection, the trial court issued the following orders *in addition to* the standard orders that required Rasawehr to stay away from and not initiate contact with either Joni or Rebecca:

> **"RESPONDENT SHALL REFRAIN from posting about Petitioners on any social media service, website, discussion board, or similar outlet or service and shall remove all such postings from CountyCoverUp.com that relate to Petitioners. Respondent shall refrain from posting about the deaths of Petitioners' husbands in any manner that expresses, implies, or suggests that the Petitioners are culpable in those deaths."**

{¶51} The principle in the enforcement of a CSPO is narrowly tailored to the "interest of protecting the safety of the person protected by the order." *State ex rel. Livingston v. Lanzinger,* 6th Dist. Lucas No. L-16-1281, 2017 Ohio App.LEXIS 669 (Feb. 14, 2017). Thus, it is axiomatic that the overriding purpose of a CSPO is to protect the *future safety* of the protected person.

-24-

{¶52} Further, enforcement of a CSPO, generally, is through contempt proceedings in the trial court. R.C. 2903.214(K). And, "[a] party cannot be found in contempt if the contempt charge is premised on a party's failure to obey an order of the court and the order is not clear, definite, and unambiguous and is subject to dual interpretations." *Contos v. Monroe County,* 7th Dist. Monroe No. 04 MO 3, 2004-Ohio-6380, ¶ 15, citing *Chilcote v. Gleason Const. Co.,* 5th Dist. Ashland No. 01COA01397, *2 (Feb. 6, 2002), *Collette v. Collette,* 9th Dist. Summit No. 20423, *2 (Aug. 22, 2001), *Marysville v. Wilson,* 3rd Dist. Union No. 14-94-8, *2 (July 20, 1994), *Smith v. Smith,* 10th Dist. Franklin Nos. 64299 and 64300, *2 (Dec. 16, 1993). However, "[a]n order is not ambiguous merely because a party misunderstands the order and a misunderstanding of an unambiguous order is not a defense to a contempt proceeding." *Id.,* citing *Chilcote* at *2 and *Gilbert* at *7. "To be ambiguous, the order must be unclear or indefinite and subject to dual interpretations." *Id.,* citing *Chilcote* at *2 and *Gilbert* at *8.

{¶53} In the case before us, the trial court's order directing Rasawehr to "refrain from posting about Petitioners on any social media service, website, discussion board, or similar outlet service and shall remove all such postings from CountyCoverUp.com that relate to Petitioners" is problematic. This order, directing Rasawehr to "refrain from posting about Petitioners" is ambiguous. Clearly, although not set forth in the record, potential harmless posts (from the Appellee to

the Petitioners) (i.e. birthday greetings, holiday invitations, condolences, days of special meaning, family events, etc. etc.) are impacted by this portion of the trial court's order. With the safety of Petitioners being primary, such seemingly innocuous posts (by Rasawehr about the petitioner) would be a violation of the trial court's order. As such, the interpretation of the context of postings "about Petitioners" that are prohibited is ambiguous. Similarly, the trial court's order directing Rasawehr to "remove all such postings… that relate to Petitioners" is also ambiguous for similar reasons.

{¶54} In short, I suggest that the first sentence of the trial court's order (set forth above) is unenforceable as presently written. As such, this portion of each protection order is contrary to law.

{¶55} Nonetheless, I agree that the second sentence of the trial court's order (in question) does apprise Rasawehr of what future postings (relating to the Petitioners) are prohibited and is rationally related to the pattern of conduct (of Rasawehr) that caused each Appellant mental distress. As such, I conclude that this portion of the trial court's order is for the protection and safety of the protected person and is not ambiguous.

{¶56} Therefore, I would reverse this matter solely as to the first sentence (set forth above) and affirm the issuance of both CSPO's in line with the majority's reasoning.