[Cite as *Coleman v. Razete*, 2019-Ohio-2106.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

DAVID DOUGLAS COLEMAN, : APPEAL NO. C-180232
TRIAL NO. SK1701382

    Petitioner-Appellee, :

  vs. : *O P I N I O N.*

TINA ELIZABETH RAZETE, :

    Respondent-Appellant. :


Civil Appeal From:    Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  May 29, 2019


*Douglas C. Bond, D. Coleman Bond* and *Peter Rosenwald*, for Petitioner-Appellee,

*Diehl & Hubbell, LLC,* and *Martin E. Hubbell,* for Respondent-Appellant.

**ZAYAS, Judge**.

{¶1}   Respondent-appellant Tina Elizabeth Razete appeals from the trial court's adoption of a five-year civil stalking protection order ("CSPO") issued against her for stalking petitioner-appellee David Douglas Coleman.  Because there was credible evidence demonstrating each element of Coleman's menacing-by-stalking claim, we affirm the trial court's issuance of the CSPO.  However, we find the CSPO impermissibly broad where it commands Razete not to post any comment about Coleman during the pendency of the order.  Accordingly, we vacate that portion of the order and remand for further proceedings consistent with this opinion.

## I.   Background and Procedural History

{¶2}   Coleman was a relationship consultant and public speaker.  He spoke over 70 times a year primarily to college groups on topics concerning "dating relationships, romance, leadership, [and] team building."  He maintained a website titled "Datingdoctor.com" to promote his speaking and relationship-coaching business.   He also gained speaking appearances by attending professional conferences held by groups such as the National Association of Campus Activities ("NACA").

{¶3}   Between 2011 and 2015, Razete often had accompanied Coleman on his speaking tours.  Coleman frequently informed attendees that all proceeds from the sale of promotional materials at the event would "benefit charity," including the Wounded Warrior Project.

{¶4}   Coleman and Razete were married in 2014.  The parties separated one year later, and the marriage ended in divorce in July 2017.  The final decree of divorce resolved, inter alia, all financial claims by Razete against Coleman.  Even before their divorce had become final, Razete began to post comments on multiple internet and social-media sites describing him as a liar, a cheat, a narcissist, a gambler, and a sex addict.

{¶5} Razete created a website called "Fraudalert.com" to disseminate numerous claims against Coleman. He was the only subject of the website. On the website and other social-networking platforms including Twitter and Facebook, Razete alleged that Coleman had stolen money from her, and that he had lied to his audiences by telling them that profits from his merchandise sales were donated to charities such as The Wounded Warrior Project. Coleman later admitted that he had not in fact donated any sale proceeds to the charity.

{¶6} Razete also claimed that Coleman had been fired from employment at Xavier University. In another post, Razete claimed that Coleman was "under investigation" by the Internal Revenue Service ("IRS"), the Federal Bureau of Investigation, the Wounded Warrior Project, the Better Business Bureau, the Federal Trade Commission ("FTC"), and the office of the Ohio Attorney General. Razete had posted a variety of disparaging and misleading comments on the site. She posted an image of the IRS logo above the caption "Tax Fraud." Under the Wounded Warrior Project logo, Razete described Coleman as a "liar," and commented that "Wounded Warriors are disgusted with David Coleman." She also posted links to Coleman's 2013, 2014, and 2015 federal tax returns. Razete admitted reporting Coleman to the agencies, but apparently none of them had followed up with Coleman.

{¶7} In April 2017, Razete posted a picture online of a human silhouette target with numerous bullet holes in it. In a text thread under the picture, Razete responded to a comment by Coleman stating that, "I swear to god. If I get to the breaking point I'm taking you out with me." Razete later added that she was not threatening Coleman but had claimed only to want to harm herself.

{¶8} Razete also took more direct steps to hurt Coleman and his college-speaking business. In August 2017, Razete emailed Mortar Board, a national college honor society that had previously honored Coleman, and told them that Coleman had cheated her out of $200,000.

{¶9}   In October 2017, Coleman attended a NACA conference at the Northern Kentucky Convention Center.  Razete parked a large recreational vehicle ("RV") directly across the street from the convention center entrance.  The RV was covered with large signs and banners disparaging Coleman.  For example, one sign stated that "The real David Coleman is: a liar, threatening, abusive, a gold digger, a cheater, a scam artist, a gambling addict" and urged colleges not to book Coleman.  Another sign depicted an empty Wounded Warrior Project wheelchair while figures labeled as FTC and IRS employees inquired, "Where's our money?  See public records for the answers—Fraudalert.com."  A nearby sign described Coleman, "Guilty as Charged."  Razete also seated model human skeletons in lawn chairs near the RV to represent the organizations that, she claimed, Coleman had scammed.  Coleman's agent, Sailesh Jaiwan, confronted Razete during the NACA conference.  She told him that Coleman still owed her money and that, "I want my pound of flesh."

{¶10}  The local media covered Razete's demonstration.  Jaiwan stated that Razete's actions caused consternation within the conference and ultimately reduced Coleman's business by 15 to 20 percent.  Jaiwan explained that Coleman appeared to be depressed as a result of Razete's postings and her actions at the NACA conference.  Kim Arthur, Coleman's friend, testified that whenever Coleman found another online post from Razete his mood would change.  He would become depressed, and would stop talking and eating.

{¶11}  Coleman stated that Razete's online postings caused him mental distress.  Razete had dramatically escalated the use of multiple sites on multiple platforms to disparage him, and he described the period since Razete began posting as "the most mentally distressing time."  He stated that he woke each morning with a feeling "of dread of what she might have done or said or posted or wrote, how she attacked me the day before."  Coleman noted that he often hyperventilated and felt nauseous when his phone rang or when it alerted him to a new incoming message or

email. He stated that as a result of Razete's continual postings, he became depressed, was not sleeping well or eating well, and had had thoughts of taking his own life. As a result, he sought help from his primary care physician who referred Coleman to a psychiatrist. Coleman was treated with antidepressants and counseling. He also sought help by speaking frequently with his minister.

{¶12} On October 30, 2017, Coleman filed a petition for a CSPO under R.C. 2903.214, the statute permitting protection orders for victims of menacing by stalking. Coleman alleged that Razete had inflicted "tremendous mental distress" through her repeated "cyber harassment and stalking via various social media outlets." The magistrate issued an ex parte order and ordered the parties to appear at a full hearing on the petition.

{¶13} The magistrate held a hearing at which Razete, Coleman, Jaiwan and Arthur testified. During her testimony, Razete admitted that she reported Coleman to the IRS, the FTC, and the other investigative agencies or organizations. She admitted making the challenged online postings and appearing with her RV at the conference. She claimed, however, that she was free to act because the information that she had disseminated was accurate and true. She remained adamant that, "When I see an injustice I'll continue to share [it] with the public."

{¶14} On January 25, 2018, the magistrate granted Coleman's petition and issued a CSPO. He journalized findings of fact and conclusions of law which were incorporated into the CSPO. The magistrate found that "even before the divorce was final, Razete began a campaign of harassment via multiple social media platforms, all of which she admitted to creating and authoring. These postings disparaged Coleman's character, career, and reputation." He concluded that Coleman had demonstrated by a preponderance of the evidence that Razete had knowingly engaged in a pattern of conduct that caused Coleman mental distress.

5

**{¶15}** The magistrate noted that while direct contact between the parties was minimal, Razete had "repeatedly contacted organizations that employ Coleman or those to which he belongs." The magistrate concluded that this was "one of the most egregious and troubling cases of harassment this court has seen."

**{¶16}** In addition to the standard orders requiring Razete to have no contact with Coleman for a period of five years, the magistrate issued the following order, which it incorporated into paragraph nine of the CSPO:

> IT IS FURTHER ORDERED: Within 14 days of the mailing of this order, respondent Tina Elizabeth Razete shall remove all references to Petitioner David Douglas Coleman and the "Dating Doctor" from <u>ALL</u> social networking sites that Razete operates, controls, or uses. This includes, but is not limited to, Twitter, Facebook, Instagram, or any other sites and accounts Razete may open. Razete shall not post any comments about the above during the course of this order. If Razete violates this term of the order or fails to remove her posts, she shall not only be subject to criminal prosecution under R.C. 2919.27(A)(2), but also will be subject to being held in contempt of the court's order.

**{¶17}** The trial court adopted the magistrate's order granting the CSPO. Razete filed an objection arguing that since her comments about Coleman were true the CSPO should not have issued, and that the scope of the orders of protection, particularly the requirement of paragraph nine, was overbroad. The trial court overruled her objection. Razete brought this appeal.

**{¶18}** The trial court's order granting the CSPO was a final, appealable order once the court adopted and entered the order on its journal on January 25, 2018. *See* R.C. 2903.214(G)(1); Civ.R. 65.1(G); *see also Heimann v. Heekin*, 1st Dist. Hamilton No. C-130613, 2014-Ohio-4276, ¶ 8; *Parker v. Parker*, 1st Dist. Hamilton

No. C-130658, 2014-Ohio-5516, ¶ 6. But Razete's filing of objections to the trial court's adoption of the protection order stayed the running of the time for her appeal until the court ruled on the objections. Thus, Razete's April 20, 2018 notice of appeal was timely filed.

## II. Issuance of the CSPO

{¶19} In her first assignment of error, Razete contends that the trial court erred in issuing the CSPO. She argues that Coleman failed to offer any evidence that her internet postings and other conduct had caused his mental distress. She also maintains that, while lawful conduct or speech may cause mental distress, it would be inappropriate to issue a protection order.

{¶20} Razete's initial challenge is to the sufficiency of the evidence produced at trial. This court's review for sufficiency of the evidence is a test of adequacy— whether the evidence is legally sufficient to support the judgment as a matter of law. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 11; *see also Denney v. Sanders*, 1st Dist. Hamilton No. C-150556, 2016-Ohio-5113, ¶ 22; *J.R. v. Pless*, 9th Dist. Summit No. 27665, 2016-Ohio-14, ¶ 6. That is, we must affirm the trial court on this issue if evidence exists on each element of Coleman's claim. *Eastley* at ¶ 19.

{¶21} In order for a CSPO to issue under R.C. 2903.214, the petitioner must show by a preponderance of the evidence that the respondent engaged in conduct that would constitute menacing by stalking as defined in R.C. 2903.211. *See Griga v. DiBenedetto*, 2012-Ohio-6097, 988 N.E.2d 590, ¶ 3 (1st Dist.); *see also Denney* at ¶ 23. R.C. 2903.211 provides in pertinent part, that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person." R.C. 2903.211(A)(1). R.C. 2903.211(A)(2) prohibits a

person from violating subsection (A)(1) by using "any form of written communication or any electronic method of remotely transferring information," or by using any such device to "post a message or use any intentionally written or verbal graphic gesture[.]"

{¶22} "Post a message" means to transfer, send, post, publish, disseminate, or otherwise communicate, "any message or information, *whether truthful or untruthful*, about an individual, and whether done under one's own name, under the name of another, or while impersonating another." (Emphasis added.) R.C. 2903.211(D)(7).

{¶23} A "pattern of conduct" is defined as "two or more actions or incidents closely related in time[.]" R.C. 2903.211(D)(1). An individual acts "knowingly" simply when she is aware that her conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). Thus, a petitioner seeking a CSPO " 'is not required to prove purpose or intent to cause physical harm or mental distress.' " *Bey v. Rasawehr*, 3d Dist. Mercer No. 10-18-02, 2019-Ohio-57, ¶ 28, *jurisdictional memorandum filed,* Supreme Court Case No. 2019-0295 (Feb. 27, 2019), quoting *Wilson v. Lyon*, 3d Dist. Marion No. 9-16-17, 2016-Ohio-7734, ¶ 13.

{¶24} "Mental distress" is defined as any mental illness or condition that either causes temporary substantial incapacity or would require treatment by a mental-health professional or other mental-health services, whether or not help was actually sought. R.C. 2903.211(D)(2). An incapacity is substantial if it has a "significant impact upon the victim's daily life." *State v. Horsley*, 10th Dist. Franklin No. 05AP-350, 2006-Ohio-1208, ¶ 48. Expert testimony is not required to demonstrate that a petitioner has suffered from mental distress. *See Smith v. Hein*, 1st Dist. Hamilton No. C-140529, 2015-Ohio-2749, ¶ 9.

{¶25} For purposes of R.C. 2903.211, the constitutional guarantee of free speech does not include the right to cause distress or harm, and can be the subject of a CSPO when the speech is threatening or interferes with the rights of others by

causing mental distress. *See Kreuzer v. Kreuzer,* 144 Ohio App.3d 610, 761 N.E.2d 77 (2d Dist.2001) (picketing activities that targeted ex-wife's home on an unlit back street after dark served no other purpose than to torment former wife); *Curington v. Moon*, 2d Dist. Montgomery No. 22809, 2009-Ohio-3013, ¶ 41 (threats to "fuck up" or kill ex-boyfriend and his family were not protected speech); *State v. Farmer*, 5th Dist. Licking No. 15 CA 0044, 2015-Ohio-5434, ¶ 82 (repeatedly mailing creepy and unwelcome packages, cards, and emails after repeated requests to stop was not protected speech); *Bey v. Rasawehr*, 3d Dist. Mercer No. 10-18-02, 2019-Ohio-57, ¶ 42 (creating internet postings that suggested petitioners were culpable in their husbands' deaths and conspired with county officials to cover it up was not protected conduct or speech); *see also Denney v. Sanders*, 1st Dist. Hamilton No. C-150556, 2016-Ohio-5113, ¶ 27 (issuing a CSPO for yelling at and threatening neighbor in excess of 30 times over a soured business relationship causing petitioner to fear for his life and personal safety was not an abuse of discretion). "R.C. 2903.211 is not aimed at the expression of ideas or beliefs but rather at oppressing behavior that invades another person's privacy interests." *State v. Smith*, 126 Ohio App.3d 193, 210, 709 N.E.2d 1245 (7th Dist.1998), citing *State v. Dario*, 106 Ohio App.3d 232, 665 N.E.2d 759 (1st Dist.1995).

{¶26} In this case, there is ample, credible evidence to demonstrate that Razete's online postings about Coleman and her appearance at the NACA had knowingly caused, and in part served to cause, Coleman mental distress. Razete's own testimony, and the testimony of Coleman, his friend, and his agent, confirmed that Razete's actions had a significant impact upon Coleman's daily life and led Coleman to seek treatment from mental-health professionals. Razete argues that while her postings about Coleman may have caused him mental distress, it would be inappropriate to issue a protection order because the postings were true. But the truthfulness of her postings is irrelevant under Ohio's menacing-by-stalking statute,

9

as truthful or untruthful speech can be prohibited where it causes mental distress. *See* R.C. 2903.211(D)(7). Based upon the evidence presented, we find that the trial court did not err in finding that Coleman proved by a preponderance of the evidence that he was entitled to have a CSPO issued against Razete.

{¶27} The first assignment of error is overruled.

### III. Scope of the CSPO

{¶28} In her second assignment of error, Razete challenges the scope of the restrictions placed on her speech by the CSPO. Razete maintains that the restrictions imposed by the magistrate—ordering her to remove all references to Coleman on any internet site or social-media outlet that she controls, and refrain from making any comment about Coleman—were overbroad. We agree, in part.

{¶29} R.C. 2903.214(E)(1) provides that the trial court may issue any protection order that contains terms designed to ensure "the safety and protection" of the petitioner, the individual to be protected by the CSPO. Restrictions placed on the respondent in the CSPO must bear a sufficient nexus to the conduct that the trial court is attempting to prevent. *See Elkins v. Reed*, 5th Dist. Stark No. 2013CA0090, 2014-Ohio-1216, ¶ 45, citing *Maag v. Maag*, 3d Dist. Wyandot No. 16-01-16, 2002 WL 468585, *3 (Mar. 28, 2002).

{¶30} Generally, this court reviews challenges to the scope of a CSPO under an abuse-of-discretion standard. *Denney*, 1st Dist. Hamilton No. C-150556, 2016-Ohio-5113, at ¶ 19. Where, as here, a respondent asserts that her First Amendment rights have been unnecessarily restricted by an overly broad CSPO, "the relevant determination is whether enforcing the CSPO is necessary to achieve the overriding interest of protecting the safety of the person protected by the order, and is narrowly tailored to serve that interest." *T.D. v. C.N.*, 2018-Ohio-1840, 113 N.E.3d 123, ¶ 45 (8th Dist.), citing *State ex rel. Livingston v. Lanzinger*, 6th Dist. Lucas No. L-16-1281 (Feb. 14, 2017).

**Ordering the Removal of References to Coleman was Sufficiently Narrow**

{¶31} Requiring Razete to remove all existing references to Coleman from internet or social-networking sites that she operates or controls was narrowly tailored to redress the specific pattern of conduct that Razete had engaged in to knowingly cause Coleman mental distress. Limiting the removal of Razete's posts to those with existing references to Coleman prevents further mental distress to Coleman and also safeguards free speech concerns. *See T.D.* at ¶ 45; *Bey*, 3d Dist. Mercer No. 10-18-02, 2019-Ohio-57, at ¶ 44; *Elkins v. Reed*, 5th Dist. Stark No. 2013CA0090, 2014-Ohio-1216, ¶ 45. Furthermore, evidence in the record supports the restriction. The trial court did not abuse its discretion when it ordered the removal of references to Coleman.

**Forbidding Future References to Coleman was Overbroad**

{¶32} Forbidding Razete from posting "any comments about the above during the course of this order," on pain of contempt or further criminal prosecution, is not narrowly tailored to protect Coleman from harm. It is an overbroad governmental restriction on speech " 'before its actual expression,' " or, a prior restraint on speech. *See State ex rel. Toledo Blade Co. v. Henry Cty. Court of Common Pleas*, 125 Ohio St.3d 149, 2010-Ohio-1533, 926 N.E.2d 634, ¶ 20, quoting *Black's Law Dictionary* 1314 (9th Ed.2009). The court's order here is a prior restraint because it attempts to forbid Razete from posting about Coleman, and it was issued before she had posted anything further.

{¶33} Prior restraints are "not unconstitutional per se, [but] there is a heavy presumption against their constitutional validity." *State ex rel. Toledo Blade Co.* at ¶ 21. Prior restraints are strongly disfavored because they " 'tend to *encourage* indiscriminate censorship in a way that subsequent punishments do not.' (Emphasis sic.)" *Id.*, quoting 2 Smolla, Smolla and Nimmer on Freedom of Speech, Section 15-14.3 (2009). Prior restraints are permissible only in exceptional

cases. *See, e.g., New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) (enjoining publication of documents relating to national security).

{¶34} Here, the CSPO contains an indiscriminate restriction on Razete's speech, prohibiting *any* comment on Coleman. This includes potentially harmless posts in addition to statements designed to cause him distress. By its express terms, the provision also forbids Razete from even naming Coleman as her ex-spouse, even where she might be required to, such as in an online application for insurance or employment. What is required is a narrowly-tailored injunction that would both protect Coleman and adhere to free speech safeguards. *See, e.g., Bey*, 3d Dist. Mercer No. 10-18-02, 2019-Ohio-57, at ¶ 44-46 (holding that the trial court's order for the offender-stalker to refrain from posting about petitioners' culpability in their husbands' deaths was sufficiently narrow). As written, the prohibition on any comments about Coleman is an impermissible prior restraint on speech.

{¶35} Accordingly, we sustain Razete's second assignment of error, in part.

### IV. Conclusion

{¶36} Having overruled Razete's first assignment of error, and having sustained her second assignment of error, in part, we vacate that portion of the CSPO ordering that "Razete shall not post any comments about the above during the course of this order." The trial court's issuance of the CSPO, and all other restrictions contained within, is affirmed. We remand the matter for further proceedings consistent with law and this opinion.

Judgment accordingly.

**MOCK, P.J.,** and **BERGERON, J.,** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.

